NATHANIEL LIPSOHN *vs.* SAMUEL L. GOLDSTEIN & another.

Suffolk. March 19, 1912. — May 24, 1912.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DeCOURCY, JJ.

*Mortgage,* Of personal property: foreclosure.

A master, to whom was referred a suit in equity to enjoin the removal of household furniture which the plaintiff had mortgaged to secure a loan of $205 and which six months afterwards had been sold at foreclosure sale for $65, found that ample notice of the sale was given and that, although the notice did not state the terms of the sale and they were not announced until the sale was opened, nothing was done to hinder the plaintiff from having a fair opportunity to get money to pay off the mortgage or bid at the sale, and that there was no bad faith or unreasonableness in making the terms cash. He also reported that there was no evidence submitted by either party as to the value of the furniture at the time of the sale, and that he could not "find that the price at which the chattels were struck off was low in proportion to their real value." *Held,* that the bill should be dismissed.

BILL IN EQUITY, filed in the Superior Court on June 16, 1908, and afterwards amended, alleging that the plaintiff's household furniture had been sold to the defendant Masofsky illegally at a sale in

foreclosure of a mortgage, and seeking to enjoin the defendants from taking measures to remove it. In the amendment there was an allegation of readiness to pay what was due upon the mortgage.

In the Superior Court the suit was referred to Francis M. Carroll, Esquire, as master. Among facts found in his report and in a supplemental report were the following:

On December 7, 1907, the plaintiff, to secure a note for $205, gave to one Ready a mortgage "covering certain household furniture enumerated therein and which was examined by Ready before the loan was made." The mortgage provided that the amount borrowed was to be repaid in six equal monthly payments with interest at the rate of $6.15 per month. On April 8, 1908, there was due to Ready $72.10. On May 22, 1908, Ready assigned the mortgage to the defendant Goldstein, who immediately took steps to foreclose it by advertisement and sale, the sale to take place at eleven o'clock in the forenoon of June 15. The plaintiff received notice of the sale on June 8. The notice contained no statement of the terms, whether cash or otherwise, under which the sale would be conducted. At about ten o'clock in the forenoon of the day of the sale, the defendants Goldstein and Masofsky and an auctioneer went to the plaintiff's residence for the purposes of a sale. The plaintiff refused them admittance. There were some negotiations as to settlement of the amount due on the mortgage. There was talk about the plaintiff giving a note for the amount due, the note to be signed by the plaintiff and his wife and indorsed by his father-in-law, who was financially responsible. Goldstein was willing to accept this, but the plaintiff would not agree to the proposal. The bargaining continued until nearly eleven o'clock without resulting in any agreement. Between 10.45 and eleven o'clock, the wife of the plaintiff asked to be allowed to go for money to her mother who lived at a walking distance of four or five minutes. Goldstein stated to her that the sale would have to be started before eleven o'clock or the proceedings abandoned and that he would not wait for her. The auctioneer then announced that the sale must begin if it was to be conducted at that time and at about three minutes before eleven he put up his flag. When the sale was started, the first bid was by the defendant Masofsky at $60, the second by the plaintiff at $61, and the third by the plaintiff's sister-in-law at $62. The property was finally

struck off for $65 to the defendant Masofsky, who was there as a friend of the defendant Goldstein and to whom Goldstein furnished the necessary cash.

The master further found as follows: "I find as a fact that the plaintiff had known for several days that the sale was to take place at eleven o'clock on the morning of June 15, 1908, that a paper containing the notice of foreclosure was mailed to and received by him, and that the plaintiff's wife had had time to go to her mother for money between ten o'clock and the time when the sale actually began had she so desired. Mrs. Lipsohn [the plaintiff's wife] testified she knew the sale was to take place at least one day before said June 15. I find as a fact that Goldstein did nothing to hinder or prevent the plaintiff from having a fair opportunity to get the money to pay off the mortgage or bid at the sale."

"From the talk he had been having with the plaintiff, the defendant Goldstein must be held to have known that the plaintiff did not have sufficient money at that time to pay cash for the goods if struck off to Lipsohn. But in view of the fact that care had been taken to notify the plaintiff that the sale was to take place and that the plaintiff knew of the sale in season to supply himself with cash to pay the balance due if he was able to do so, and from the further fact that the plaintiff had rejected the overtures to make a settlement by giving a note, I find that under all the circumstances there was no bad faith or unreasonableness in making the terms cash."

"There was no evidence submitted by either party at any of the hearings as to the value of the chattels in question. These chattels were enumerated in the mortgage given by the plaintiff and consisted of various articles of household furniture. On the day of the foreclosure, the plaintiff refused the auctioneer admission to his house, and the sale was finally made without the purchaser, or any of the other parties who came or were there with him, having seen the chattels. In conducting the sale, the auctioneer first read the list of articles enumerated in the mortgage, and called for bids on the several articles separately. No bids were made on the individual pieces as offered and they were then offered for sale as a whole. On the evidence, I cannot find that the price at which the chattels were struck off was low in proportion to their real value."

Exceptions by the plaintiff to the master's reports were overruled and the reports were confirmed by *Jenney*, J., and a final decree was entered dismissing the bill. The plaintiff appealed.

*J. H. Duffy*, for the plaintiff.

*M. F. Cunningham*, for the defendants.

BRALEY, J.    The defendant Goldstein, when as mortgagee he attempted to execute the power of sale upon default of the plaintiff, was bound to act in good faith, and to use every reasonable means to obtain the full value of the mortgaged personal property, and to protect the interests of the plaintiff who was mortgagor. *Montague* v. *Dawes*, 14 Allen, 369. *Clark* v. *Simmons*, 150 Mass. 357. The master was not directed to report the evidence, and, his findings of fact being final, it appears from the first report, and the supplemental report, which are to be read together, that the sale was advertised in a local newspaper published in the place of the plaintiff's residence, who received notice of the time and place, and if the record is silent as to the terms of the power of sale, no question is raised that they were not followed. The plaintiff did not request an adjournment of the sale although there were few bidders, and the master finds, that the price obtained was not disproportionate to the real value of the property. It is conceded that the notice contained no reference to the terms of payment, and the plaintiff, who up to the last moment endeavored to raise enough money to prevent the sale of his household goods, was unable to obtain the money. The power of sale, however, must be assumed to have been in the ordinary form, and the mortgagee could have sold, and arranged with the purchaser to give credit for the purchase money, and if the property had brought more than the sum secured by the mortgage he would have been answerable to the plaintiff for the surplus. *Bailey* v. *Aetna Ins. Co.* 10 Allen, 286. The plaintiff's financial inability undoubtedly influenced the terms of sale, but if so, the master reports, that under the circumstances the requirement that the purchaser must pay cash was not unreasonable or insisted upon by the mortgagee in order to get the property at less than its value or to deprive the plaintiff of further opportunity to redeem. The purchaser, who is joined as a defendant, was present during the negotiations, and when the property was struck off the mortgagee furnished the money to pay for it. If the mortgagee had previously hindered

the plaintiff from raising the money, or sought to prevent him from bidding, the vendee would not have been an innocent purchaser for value and without notice of his conduct, and the foreclosure would have been invalid. *Gilson* v. *Nesson*, 208 Mass. 368, 371. *Wenz* v. *Pastene*, 209 Mass. 359. But the master having found that the mortgagee did nothing to hinder or delay the plaintiff, who had a reasonable opportunity to raise the money, the sale cannot be vitiated on this ground. The price not having been grossly inadequate, and the mortgagee not being chargeable with bad faith, the plaintiff has failed to sustain the essential averments upon which he relied for relief, and the decrees of the Superior Court overruling the plaintiff's exceptions to the supplemental report, and confirming the report, and the final decree dismissing the bill, should be affirmed. *Fennyery* v. *Ransom*, 170 Mass. 303, 306, 307, and cases cited.

*Ordered accordingly.*