JOSIAH BON *vs.* JAMES P. GRAVES & another.

Suffolk. December 2, 1913. — January 12, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, & DE COURCY, JJ.

*Mortgage,* Of real estate. *Attorney at Law. Rules of Court. Assignment. Equity Jurisdiction,* To set aside foreclosure sale under prior mortgage and redeem. *Disseisin. Deed,* Seal, Confirmatory. *Equity Pleading and Practice,* Master.

If a mortgage of land and the note secured by it given by the wife of a person arrested upon an indictment to an attorney at law, who acted as attorney for her husband, to indemnify him for entering with another into a recognizance for such husband's appearance, are made invalid between the original parties by Rule 4 of the Superior Court, which forbids an attorney at law to "become bail or surety in any criminal proceeding in which he is employed," which here was not decided, such mortgage becomes valid when assigned with the mortgage note before maturity at the request of the mortgagor to a *bona fide* holder for value without notice of its possible original infirmity.

A mortgage of land and the note secured by it, which were given by the wife of a person arrested upon an indictment to indemnify one who entered into a recognizance for such husband's appearance, can be transferred by its holder, before his obligation under the recognizance is discharged, to a third person at the

request of the mortgagor as security for a loan from such third person to the mortgagor, so as to give such third person the same rights against a prior mortgagee that he would have had if the mortgage assigned to him had been made to him originally to secure the loan from him.

In a suit in equity brought by a mortgagee of certain land, where the defendant contends that the plaintiff's title is defective because the deed under which his mortgagor claimed title had no seal affixed to it, but it appears that the mortgagor took possession of the property under the defective deed and lived in the only house upon the land at the time he made the mortgage, this is evidence that such mortgagor had become a disseisor of the whole premises and had a right to convey by mortgage whatever title he had as disseisor, and, on proof of a confirmatory deed from the grantor named in the defective deed to the mortgagor's grantor, executed after the hearings in the suit had begun, it can be found that the plaintiff is entitled to enforce whatever rights belong to a mortgagee.

It is within the discretionary power of a master to whom a suit in equity has been referred to receive in evidence, even after the hearings before him have been closed, a confirmatory deed, executed after the hearings began, making good the plaintiff's title as a mortgagee, which has appeared to be defective by reason of the absence of a seal from the instrument purporting to be a deed under which the plaintiff's mortgagor claimed title.

It is the duty of a mortgagee of land, in making a foreclosure sale under a power in the mortgage, to exercise good faith in using a reasonable degree of effort and diligence to secure and protect the interests of the owner of the equity of redemption and of the holder of a junior mortgage, and he may fail in the performance of this duty so that the sale will be voidable in equity by a junior mortgagee, although he has complied technically with the terms of the power of sale.

Where the holder of a first mortgage on certain land, of which he wished to acquire the absolute title by a foreclosure sale, in advertising such a sale gave notice for the shortest period permitted by law in a newspaper of limited circulation in the neighborhood of the land, although five other newspapers circulated there to a greater extent, and, although he knew that two neighbors wished to buy portions of the land and would bid at the sale if they knew of it, gave them no notice of the sale, even when one of them asked him about it two days beforehand, and, although he knew that a certain person claimed to hold a second mortgage on the land, gave him no notice of the sale, and where at the sale such holder of the first mortgage and those in his interest were the only persons present and the premises were sold to such holder of the first mortgage for less than three fifths of their fair market value, although the discrepancy in price was not so great as in itself to show bad faith, it was *held*, that the holder of the second mortgage could maintain a suit in equity to set aside the sale and redeem the land from the first mortgage, because all the acts of the holder of the first mortgage, taken together, showed a failure to use good faith in executing the power of sale although there had been a technical compliance with its terms.

BILL IN EQUITY, filed in the Supreme Judicial Court on December 17, 1912, by the holder by assignment of a second mortgage on certain land in Norwell given by one Margaret L. Brown to one

Jacob Friedberg, to set aside a foreclosure sale under a first mortgage by which the defendant Graves acquired his alleged title and to be allowed to redeem the property from such first mortgage.

The case was referred to Walter F. Frederick, Esquire, as master. The material facts reported by the master are stated in the opinion.

The plaintiff filed the following exceptions to the master's report:

"1. To the finding or ruling 'from all the evidence I cannot find that the amount received under the sale was so inadequate of itself it would leave a suspicion that the sale had not been fairly conducted.'

"2. To the refusal or failure to rule that the sum of $2,900 was not an adequate price to pay for the premises covered by the Kendall mortgage on October 1, 1912.

"3. To the refusal of the master to reopen the case for the purpose of allowing the deed of George A. Brown to Annie B. Nelson, dated March 24, 1913, to be offered as evidence for the purpose of controlling the facts therein recited."

The defendants filed the following exceptions to the master's report:

"1. To the admission in evidence by the master of the unsealed instrument purporting to be a conveyance of title to certain land from George A. Brown to Annie B. Nelson.

"2. To the refusal of admission in evidence by the master of testimony as to the amount of money paid by the complainant to Margaret L. Brown, as security for which he received an assignment of the second mortgage.

"3. To the admission by the master of the confirmatory deed of George A. Brown to Annie B. Nelson."

The case was heard by *Loring*, J., upon the exceptions to the master's report. The justice made an order overruling the exceptions of both parties and confirming the master's report, and reserved the case, upon the bill and answer, the master's report and the exceptions of both parties thereto, for determination by the full court.

*Lee M. Friedman*, for the plaintiff.

*H. P. Williams*, for the defendants.

RUGG, C. J. The plaintiff, who asserts that he is the holder of a second mortgage, seeks to set aside a foreclosure made by the

holder of an earlier mortgage covering most of the same land described in the plaintiff's mortgage. There is no contention that the first mortgage was not valid. The only attack upon it is directed against the validity of its foreclosure. But the defendants contend that on several grounds the plaintiff is not entitled to maintain his bill.

The mortgage under which the plaintiff claims was given in the first instance under these circumstances: Robert S. Brown in March, 1911, was arrested upon an indictment, and one Friedberg and another entered into a recognizance in the penal sum of $3,500 for his appearance. Friedberg was an attorney at law, practicing in Boston, and acted as attorney for Brown. In September, 1911, this mortgage was given by Margaret L. Brown, the wife of Robert, to Friedberg to indemnify the latter for his liability as surety upon the recognizance. It is not necessary to determine whether this transaction was illegal under Rule 4 of the Superior Court, which forbade Friedberg as an attorney at law to "become bail or surety in any criminal proceeding in which he is employed," for the reason that it does not appear that the plaintiff, when he took an assignment of the mortgage, knew that Friedberg was attorney for Brown at the time he became surety for him. Hence it must be assumed in his favor that in this respect he was a *bona fide* holder of the note and mortgage, and, if so, it was valid in his hands notwithstanding its possible original infirmity. *Taylor* v. *Page,* 6 Allen, 86.

The question then presented is, whether when a mortgage and note are given for one consideration and purpose, viz., as indemnity for suretyship on a bail bond, they can be transferred by the first holder before his suretyship is discharged to a third person under an oral agreement that they are to be held as security for another and different obligation of the original mortgagors, and confer upon the transferee the same security and rights against a prior mortgagee that he would have had if the second mortgage had run directly to him. This point is not decided by *Joslyn* v. *Wyman,* 5 Allen, 62, *Stone* v. *Lane,* 10 Allen, 74, *Upton* v. *National Bank of South Reading,* 120 Mass. 153, and cases of that class, where, a mortgage having been satisfied, the mortgagor orally has agreed that it shall stand as security for a new loan, and later has come into equity to get the mortgage discharged. In such cases it has

been held that he cannot be given affirmative relief against the holder of the mortgage without paying the new obligation manifestly required by equity and good conscience. This rule has been applied in *Taft* v. *Stoddard,* 142 Mass. 545, to a second mortgagee seeking to redeem, who took his security with knowledge of similar facts as to a first mortgage. Nor is this a case where the condition of the mortgage at the time of its transfer to the plaintiff had been performed, and the plaintiff relies upon an assignment as a reissue of a dead instrument as in *Douglas* v. *Stetson,* 159 Mass. 428, and *Flye* v. *Berry,* 181 Mass. 442, where it was held that such an instrument was of no avail against an earlier mortgagee.

In the case at bar the note and mortgage were given as indemnity or security against a liability assumed by Friedberg, the payee and grantee. Before the obligation had been satisfied to secure which the mortgage had been given, and therefore while it possessed all its initial vitality, it was transferred by Friedberg at the request of the original mortgagor to the plaintiff as security for a loan to the original mortgagor. It was a note for a fixed amount in the ordinary form, secured by mortgage and issued as collateral for the performance of one obligation, and before its satisfaction transferred to a third person at the request of the maker as collateral for a different obligation. This violated no rule of law. The mortgage was not conditional upon the discharge of the mortgagee as surety upon the bail bond, but upon the payment of the note, which itself was held as collateral. The release of the note from its use as collateral by its first holder, before its payment or discharge, and its transfer by him to a new creditor of the maker at the latter's request, carried with it the mortgage security. The fact that the obligation for which the note and mortgage first were given was discharged after the transfer to the plaintiff was of no consequence. Before that discharge, the note and mortgage had ceased to have any relation to that obligation and had become collateral to a different one. The plaintiff's legal title on the record is perfect. There is no equity in the mortgagor under these circumstances which would enable her to dispute the rights of the plaintiff under his mortgage. He took it as security at the mortgagor's request from one in whose hands it was outstanding before it had been paid. The defendants,

holding under an earlier mortgage, stand no better in this respect than would the mortgagor. The note and mortgage continued as valid collateral in the hands of the plaintiff for the purpose for which he received them under these circumstances. As he has become the absolute owner of this collateral, he is entitled to enforce whatever rights belong to a mortgagee. See *Whitney* v. *Metallic Window Screen Manuf. Co.* 187 Mass. 557, 560.

But it is contended by the defendants that the plaintiff's title is defective in another respect. The title of Margaret L. Brown, the plaintiff's mortgagor, came through a deed from Annie B. Nelson, who was the grantee in a deed from George A. Brown, which recited that the grantor had affixed his seal and that it was sealed in the presence of attesting witnesses, but in truth it did not have a seal affixed thereto. This fact appeared upon the registry of deeds. Margaret L. Brown, however, with her husband, after the deed to her from Annie B. Nelson, lived in the only house situated upon the premises described in the deed, although there was no evidence as to the use made by her of other portions of the premises. It follows from the taking of possession under this deed, invalid for want of a seal, that she became at least a disseisor of the premises which the deed purported to convey to her. *Bellis* v. *Bellis,* 122 Mass. 414. Possession of the house under the circumstances disclosed may be inferred to have carried with it possession of the tract conveyed. *Williams* v. *Carty,* 205 Mass. 396, 398. Having thus taken possession and become disseisor of the estate, she had a right to convey by mortgage whatever title she had as disseisor. *Slater* v. *Rawson,* 6 Met. 439, 445. *Wishart* v. *McKnight,* 178 Mass. 356, 362. *Percival* v. *Chase,* 182 Mass. 371, 376. Such title gives the plaintiff a standing in court. The confirmatory deed of George A. Brown to Annie B. Nelson, executed after the hearings began in this case, properly sealed and declaring that the earlier deed from him to Nelson also was sealed, obviated the defect in the title arising from lack of a seal on the earlier deed (*Holbrook* v. *Chamberlin,* 116 Mass. 155), and, not affecting the strict legal rights of the defendants, cured whatever defects a mere disseisor might encounter in equity. See *Gaylord* v. *Pelland,* 169 Mass. 356.

The master had discretionary power to receive evidence of this confirmatory deed even after the hearings had been closed.

*New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 405.

The advertisement of the foreclosure sale under the power contained in the first mortgage, and under which the defendant Graves claims title, in its description of the land to be sold, followed that given in the mortgage, but omitted to except therefrom a tract of about three acres on which was a story and a half dwelling-house called the Rose cottage, which had been released from the lien of the mortgage. It is not necessary to determine whether this misdescription invalidated the sale, because the plaintiff expressly has waived this ground. See, however, *Chace* v. *Morse*, 189 Mass. 559, 561; *Moore* v. *Dick*, 187 Mass. 207; *People's Savings Bank* v. *Wunderlich*, 178 Mass. 453.

There are circumstances bearing upon the good faith of the defendant Graves in making the foreclosure to be considered. The duty of one acting under a power of sale in a mortgage is to use that reasonable degree of effort and diligence to secure and protect the interests of the mortgagor, the owner of the equity of redemption and junior lienors, to the observance of which he is bound by the obligation of good faith. *Montague* v. *Dawes*, 14 Allen, 369, 373. *New England Mutual Life Ins. Co.* v. *Wing*, 191 Mass. 192. The master has found that the mortgage was purchased by Graves in the name of Willard, with the intent of instituting foreclosure proceedings and enabling him to acquire the premises by purchase at such sale, if he could do so without paying a larger sum than he was willing to pay, (which may not have been a fair price); that he instituted foreclosure proceedings within fifteen days after his purchase of the mortgage, and allowed the shortest period permitted by law to elapse between the first advertisement and the sale. This advertisement was printed in a newspaper of limited circulation in the neighborhood, although five other newspapers circulated there to a much larger extent. The paper was selected by the attorney for Graves in good faith but without information from Graves, who lived near the land sold, as to the newspaper which would furnish the best medium of spreading information of the sale. No other notice of the sale was given. Graves knew that two neighbors, Goodwin and Haskins, were desirous of purchasing portions of the premises and would be likely to be bidders at a sale if they knew about it, but he gave

them no notice and did not direct that any be sent to them. One of these men called on Graves two days before the sale and asked if he had acquired the mortgage and stated he wanted to buy the property. The neighbor did not know of the proposed sale and Graves did not tell him of it, but referred him to his attorney. There were no persons present at the sale except Graves and those acting in his interest, and Graves was the only bidder, and the premises were struck off to him at $2,900. The fair value of the premises was from $5,000 to $5,500. Although the master finds that the disparity between the price paid and the true value was not so great as to show bad faith, yet the neighbors Goodwin and Haskins, if they had known of the sale, would have been present and would have bid a larger amount than the defendant Graves did. That defendant's attorney knew that the plaintiff claimed to hold a second mortgage on the premises, but no notice of the sale was given him. No one of these circumstances standing alone would show bad faith on the part of Graves in making the foreclosure. But collectively they gain a force which they fail to possess separately. Taken together, they show a failure to use that good faith which the law requires in executing a power, even though on the face of the record there was a technical compliance with its terms. It is apparent from the record that the dominant purpose of Graves was to secure the property for himself at his own price rather than to make a fair sale in accordance with the power under such conditions as are rationally calculated to result in getting for the property as much as it reasonably may be made to bring. *Clark* v. *Simmons*, 150 Mass. 357. *Price* v. *Bassett*, 168 Mass. 598. *Martin* v. *Hamlin*, 176 Mass. 180. *Lipsohn* v. *Goldstein*, 212 Mass. 144.

The master correctly excluded evidence to prove the amount which the plaintiff advanced when he took the assignment of the second mortgage. The mortgage having become a valid obligation in his hands through foreclosure, although at first taken as collateral, he is entitled to enforce his contract according to its terms. A decree is to be entered setting aside the foreclosure sale and allowing the plaintiff to redeem.

*So ordered.*