HERBERT CARR, conservator, *vs.* WALDO F. STREETER
& others.

Suffolk.   December 7, 8, 1927. — March 2, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Undue Influence.   Fraud.   Contract,* Consideration.   *Equity Jurisdiction,* To relieve from results of fraud.   *Equity Pleading and Practice,* Bill; Master: reopening of hearings, findings.

It was within the discretion of a master, to whom was referred a suit in equity by the conservator of the property of one enfeebled by age and physical condition against a nephew to whom he had assigned certain bank accounts, after the close of the evidence and before the filing of his draft report and against the objection of the plaintiff, to reopen the hearing for the answering of certain questions, propounded by the master, relating to the donor's signatures on certain orders.

At the trial of the suit above described, the plaintiff alleged in substance that the defendant had assumed a relation of trust and confidence toward his uncle, that the transfers were made in violation of that relation with intention to impose upon the uncle, with full knowledge of the uncle's enfeebled condition, and that the uncle did not understand or realize the significance of his acts in signing the orders.   The master found that the defendant knew the uncle's condition, that the relations between them were the normal relations to be expected from those who are close relatives as well as near neighbors, and that he was unable to find the other facts alleged in the bill as above stated.   He also found that the uncle realized the consequences of his acts and intended to make the transfers.   The evidence was not reported.   The bill was dismissed.   The plaintiff appealed.   *Held,* that

(1) The findings by the master could not be said to have been plainly wrong and should not be reversed;

(2) A contention by the plaintiff that the court should find and rule that the assignments in question were procured by the fraud and undue influence of the defendant also must fail, it not being supported by the findings by the master.

In the suit above described, it appeared that, about three months before the suit was brought, the plaintiff, the uncle, the defendant, and the defendant's wife, to whom some of the bank accounts had been transferred, met in conference and the uncle demanded of the nephew a return of the bank books; that the nephew informed him that some of them had been transferred to the nephew's wife; that the plaintiff then suggested that the wife be permitted to retain the books in her name and that the nephew return the others  that the uncle assented, and the nephew agreed; that no definite date for the return was set, and, later, the nephew refused to return the books  The plaintif asked the judge to rule that, "In consideration of the promise of the defendant . . . [nephew] to return the bank books referred to . . . , [the uncle] im-

pliedly agreed to forbear pressing further his demand for the return of all of the . . books referred to, and, in fact, did not press this demand further.' The ruling was refused. *Held,* that the ruling properly was refused, the defendant's promise not being on the record supported by any consideration, as there was no agreement express or implied to forbear bringing suit in reliance on the promise to make partial restitution.

BILL IN EQUITY, filed in the Superior Court on March 13, 1925, by the conservator of the estate of Amro W. Streeter against Waldo F. Streeter, Ella A. Streeter, and a number of banks, trust companies and savings banks, containing allegations in substance that the defendant Waldo, a nephew of Amro, in transactions that took place between them in 1924 and 1925, assumed toward Amro "a position of trust and confidence and professed to act toward" him "as his confidential adviser with reference to certain of his financial affairs," and that, after he "had thus engratiated himself into the confidence of the said Amro . . . and had begun to act as his confidential agent and adviser, he . . . , with intent to secure to his own use and to that of his wife and family various moneys of the said Amro . . . and with full knowledge of the enfeebled and easily susceptible mental condition of the said Amro . . . and with the intention of taking advantage of the said Amro . . . , induced the said Amro . . . upon various occasions to execute assignments or purported assignments of various savings bank deposits . . . and caused these savings bank deposits to be transferred, some into the joint names of the said Amro W. Streeter and Waldo F. Streeter, others into the name of the said Waldo F. Streeter alone, others into the name of the said Ella A. Streeter alone, others to be withdrawn in whole or in part, and possibly others into the names of persons whose identity is at present to your plaintiff unknown . . . . In procuring the execution of these assignments or purported assignments the said Waldo F. Streeter was fully conscious and aware that the said Amro W. Streeter did not realize what he was doing, that Amro W. Streeter did not intend the transfers to take effect in the form in which they ultimately were put through, that Amro W. Streeter did not appreciate nor understand the legal significance of the assignments or transfers in question,

and that the said Amro W. Streeter was reposing full trust and confidence in the said Waldo F. Streeter." The prayers of the bill were, in substance, for an accounting as to these moneys.

The suit was referred to a master. Material facts found by the master are stated in the opinion. Exceptions by the plaintiff were heard by *Morton*, J. The plaintiff asked the judge to make the following among other findings and rulings:

"3. At the time of the transactions referred to in the plaintiff's bill Amro W. Streeter imposed trust and confidence in Waldo F. Streeter.

"4. Upon the facts as found by the master and such inferences as this court properly may draw therefrom the assignments of the said bank accounts to the defendants Waldo F. Streeter and Ella A. Streeter, or either of them, were induced by the fraud and undue influence of the said defendants, or either of them.

"5. In consideration of the promise of the defendant Waldo F. Streeter to return the bank books referred to on page eight of the master's report Amro W. Streeter impliedly agreed to forebear pressing further his demand for the return of all of the ten bank books referred to, and, in fact, did not press this demand further."

The judge refused the third request, "except so far as the master has found 'trust and confidence,'" refused the fourth and fifth requests, and filed the following statement:

"A careful study of the report and the subsidiary facts found by the master does not, in my opinion, warrant such a conclusion. The report shows on its face that great care was given by the master in arriving at his conclusions. He saw the assignor, Amro W. Streeter, heard other witnesses contradicting said Streeter's testimony, and was satisfied that at the time of the assignments, although weakened somewhat mentally and physically by age, he was then of good mental and physical condition. The statement in the twelfth paragraph that he drew the inference that said Streeter did not sign the assignments without a realization of the consequences, with the statement in said paragraph which preceded, is in effect a finding that he realized such consequences. The bill alleges that said Streeter did not

realize what he was doing, and did not intend that the assignment should be for the benefit of the defendants and their child. The master has found, at least, that the evidence did not warrant such a finding. He has also found that there was no evidence of any inducements offered by the defendant Streeter or his wife in obtaining said assignments, or that they had knowledge of an enfeebled mental condition of which they could take advantage. He finds, in other words, that none of the allegations contained in paragraph two of the report are sustained by the evidence."

By order of the judge, there were entered an interlocutory decree dismissing the exceptions and confirming the report, and a final decree dismissing the bill. The plaintiff appealed.

*A. S. Allen*, for the plaintiff.

*C. C. Milton*, for the defendants.

BRALEY, J. By thrift and economy Amro W. Streeter, of whose estate the plaintiff has been appointed conservator, had acquired the premises where he lived and part of which he rented, and personal property consisting almost wholly of deposits in savings banks. The master finds that when Streeter was eighty-six years of age he signed transfer orders on the banks as stated in the report and gave the orders with the bank books to the defendant Waldo F. Streeter, his nephew, who afterwards took the orders and books to the designated banks and had five of the accounts transferred to his wife, Ella A. Streeter, or withdrawn. There were five other orders directing the transfer of accounts standing in the name of Amro W. Streeter to the joint account of Amro W. Streeter and Waldo F. Streeter, all of which orders came into the possession of Waldo F. Streeter, who shortly thereafter had the accounts transferred or withdrawn according to each order, and used the amounts for his own purposes. The moneys so transferred amounted to $16,466.07, being substantially all of Amro W. Streeter's property. The bill alleges that the defendant, Waldo F. Streeter, sustained a fiduciary relation to Amro W. Streeter who had been weakening both mentally and physically for several years and was susceptible to influence by other persons, and that with knowledge of these conditions Waldo F.

Streeter induced Amro W. Streeter to execute the assignments, of which he did not realize the legal effect, nor did he intend that the assignments should take effect as transfers of deposits. The master also finds that Amro W. Streeter while "on good terms with all his relatives and maintained normal relations with them, his associations were, at the time in question mainly with Waldo F. Streeter and family. Long before this time Amro had habitually called at the house of Waldo. Numerous small services had been rendered by Waldo and his family to Amro in the form of shovelling walks in the winter, furnishing wood, and the like. There had been business relations . . . they buying wood lots together and cutting off and selling the timber. Waldo had possessed to some extent his uncle's confidence, and had helped his uncle with his bank books by writing letters to the banks, making lists . . . ." He also had given "him automobile rides and" during an illness in the previous August, he had "spent the night with" Amro. It is found that the relations between them were the normal relations to be expected from those who are close relatives as well as near neighbors. The assignor also had previously made a will which he kept in his house giving substantially all of his property to the town of Winchendon, the place of his domicil. The master further states that Amro W. Streeter was weakened mentally and physically by age. His hearing and eyesight were impaired, but his health was sound, and apart from the weakness of years he was in good mental and physical condition.

The record shows no trust relations between the parties for which the plaintiff contends. A fiduciary relationship which the plaintiff urges is a relationship in which if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would have existed against a trustee on behalf of the *cestui que* trust. *National Bank* v. *Insurance Co.* 104 U. S. 54, 68. *Woodbury* v. *Woodbury*, 141 Mass. 329. See *Cronan* v. *Cotting*, 104 Mass. 245, 247. *Barrow* v. *Rhinelander*, 1 Johns. Ch. (N. Y.) 550. If the donor was enfeebled by age although not mentally unsound, and the gifts were of a large part of his estate, and he acted

without independent advice, these facts were all relevant on the question whether the gift was voluntary, there being no evidence of fraud or misrepresentations on the part of the defendants or any solicitation by them to induce him to part with his property. The question before the master therefore was whether the transfers by Amro W. Streeter were intended by him to be gifts.

In this connection we consider the action of the master, to which the plaintiff excepted, in reopening the case after the hearings had been closed but before the draft report had been submitted. The parties not having called the witnesses to the donor's signature on the orders, the master notified counsel that he desired their testimony and submitted the questions to be propounded which were competent on the issues before him. Counsel having assented, the case was reopened, the witnesses attended, when counsel for the plaintiff withdrew his consent. The master however asked the questions and received the evidence. The procedure was discretionary with the master. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 405    *Bon* v. *Graves,* 216 Mass. 440, 445.

While Amro W. Streeter appeared as a witness before the master and admitted his signature, he denied that he had any recollection of the transactions and testified that he had no intentions of making any gifts at the time. The master, without reciting the testimony in detail, decided upon evidence of credible witnesses that Amro W. Streeter realized the consequences of his acts and intended to make the transfers and that the material allegations of the bill had not been proved. The plaintiff contends that the findings should be set aside. But, the evidence not having been reported, we cannot say that they are plainly wrong; and, being consistent with and supported by his subsidiary findings, the master's conclusions should not be reversed. The contention of the plaintiff, that, in view of the master's subsidiary findings, the court should find and rule that the assignments in question were procured by the fraud and undue influence of the defendant Waldo F. Streeter, also must fail. It is not supported by the findings.

The plaintiff's exceptions that the master failed to make certain findings which he should have made, and to the exclusion of evidence, not having been argued, need not be considered. The first, second, third and fourth requests for further findings and rulings in so far as not adopted or given by the trial judge are in conflict with the report and were properly denied.

In January, 1925, the plaintiff, the donor, and the defendants met in conference, and Amro W. Streeter demanded from Waldo F. Streeter a return of the bank books and he was informed that the five bank books in the name of the defendant Ella A. Streeter amounting in the aggregate to about $7,000 could not be returned. The plaintiff then suggested that Ella A. Streeter be permitted to retain the bank books in her name, and that Waldo F. Streeter return the bank books in his name of the value of about $9,000. The donor assented to this proposition to which Waldo F. Streeter also agreed. But no definite time was named for the return, and at a later interview between the same parties Waldo F. Streeter refused to return the bank books, and has persisted in his refusal. The plaintiff's fifth request however could not have been given. The judge was asked to rule that, "In consideration of the promise of the defendant Waldo F. Streeter to return the bank books referred to . . . , Amro W. Streeter impliedly agreed to forbear pressing further his demand for the return of all of the ten bank books referred to, and, in fact, did not press this demand further." But the bill, which was filed March 13, 1925, asks that the defendants or either of them be ordered to account for all savings bank deposits which they have received. The promise on the record is not supported by any consideration, as there was no agreement express or implied to forbear bringing suit in reliance on the promise to make partial restitution. *Barber* v. *Rathvon*, 250 Mass. 479.

The interlocutory decree overruling the exceptions, and confirming the report, is affirmed, and the final decree dismissing the bill with costs is also affirmed with costs.

*Ordered accordingly.*