JOSEPH LEVEY *vs.* JOHN B. HIGGINSON.

Suffolk.    January 14, 1929. — February 28, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, & SANDERSON, JJ.

*Mortgage,* Of real estate: foreclosure. *Fraud. Evidence,* Relevancy and materiality.

A mortgagee who attempts to execute a power of sale contained in the mortgage is bound to exercise good faith and to use reasonable diligence to protect the rights and interests of the mortgagor.

The defendant, in his answer in an action for a balance alleged to be due on a mortgage note after a foreclosure sale, alleged bad faith of the plaintiff in the foreclosure proceedings, and that, by reason of such bad faith, he suffered damage which he was entitled to recoup.    At the trial there was evidence that the plaintiff, by means of a promise to the defendant, which he had no intention of carrying out, that he would permit the defendant to remain in possession of the property and later would sell it to him at a certain price, induced the defendant not to bid at the foreclosure sale, whereby the property was bid in for a sum much less than its value.    The judge refused to order a verdict for the plaintiff.    *Held,* that

(1) The evidence warranted a finding that the plaintiff had been guilty of bad faith in the foreclosure sale;

(2) A finding was warranted that the defendant had sustained the defence set up in his answer;

(3) It was proper to refuse to order a verdict for the plaintiff.

Evidence at the trial above described that, after the defendant at the plaintiff's request about four months after the foreclosure sale had vacated the premises, had sold his furniture and other goods, and had taken a lease of another house, the plaintiff several times had offered to sell the property to the defendant for the price formerly agreed upon, did not entitle the plaintiff to the direction of a verdict in his favor.

At the trial of the action above described, testimony by a real estate expert, called by the defendant, as to the fair market value of the property at the time of the foreclosure sale properly was admitted; and testimony by the plaintiff as to the amount received by him when he sold the property more than a year after the foreclosure sale properly was excluded.

CONTRACT to recover a balance remaining due on a note secured by a mortgage of real estate after a foreclosure under a power of sale in the mortgage. Writ in the Municipal Court of the City of Boston dated November 8, 1927.

On removal to the Superior Court, the action was tried before *Walsh*, J. Material evidence is stated in the opinion. At the close of the evidence, the plaintiff moved that a verdict be ordered in his favor. The motion was denied. The judge refused to grant the following requests by the plaintiff for rulings:

"2. The evidence in the case is insufficient to show bad faith on the part of the plaintiff in the foreclosure of the mortgage."

"6. Upon all the evidence the defendant has failed to sustain any of the affirmative defences set up in his answer.

"7. The fact that the mortgaged property may have been worth more than the amount of the indebtedness is no ground for impairing the validity of the foreclosure of the mortgage, if the sale was conducted in good faith and with reasonable regard for the interests of the mortgagor.

"8. If the jury find that there was a breach in the condition of the mortgage; that the sale was legally carried out in accordance with the terms of the power and nothing done by the mortgagee to discourage attendance of bidders, the fact that the mortgagee was the only person bidding at the sale is not itself evidence of bad faith."

There was a verdict for the defendant. The plaintiff alleged exceptions.

*W. Hartstone*, for the plaintiff.

*G. W. Howe*, for the defendant.

CROSBY, J.   This is an action to recover the amount of a promissory note for $3,000. The note was secured by a second mortgage on real estate; both were given by the defendant to Rachel Levey, the plaintiff's wife, and by mesne assignments transferred to the plaintiff who, through one Karpas (to whom the note and mortgage had been assigned for the purpose of foreclosing the mortgage) began foreclosure proceedings, the sale to be held on January 11, 1927. The defendant admitted the making of the note, that there was default in payments on the first and second mortgages, and that the plaintiff had a right to foreclose the second mortgage; but alleges bad faith of the plaintiff in the foreclosure proceedings, and that, by reason of such bad faith, the defendant suffered damage which he is entitled to recoup in this action. At the close of the evidence a motion filed by the plaintiff that a verdict be directed in his favor was denied, subject to his exception.

The defendant testified that, on January 10, 1927, the day before the sale, and while he was vacating the premises and was removing his furniture therefrom, the plaintiff asked him what he was moving for, and he replied that as the mortgage was being foreclosed that was all there was to do; that the plaintiff then said, "if you haven't got any money now, won't you ever have any money?" and the defendant said, "Yes, of course, I will," and to the plaintiff's question "Well, when will you have some money?" the defendant answered "when the mortgage comes due in November"; that the plaintiff told the defendant that all he wanted was his money, and that if the defendant was going to have money in November "why didn't he stay and pay him (the plaintiff) the carrying charges, and that he (the plaintiff) would sell the house back to the defendant in November for just what he had in it. . . that all he wanted was his money back"; that in the evening of the same day the defendant called upon the plaintiff and asked him how much he figured he had in the property, and

was told it was about $17,500 or $18,000, and that the carrying charges were $110 a month; that the defendant said, "you are willing to let me live there until next November if I pay you $110 a month in the meantime, and sell me the property the first of November for $18,000?" and the plaintiff said "Yes"; that the defendant then said "'all right then, I won't make any effort to bid that property in tomorrow, and you will bid it in, and I will continue to live there, and I will pay you $110 a month until next November, and then you will sell me the property back for $18,000?' He said, 'Yes. . . . . There is no question about it. We understand each other perfectly.'"

The defendant further testified that he saw the plaintiff the next morning at the time and place of the sale; that there were about six or seven persons present; that the defendant repeated to the plaintiff in the presence of one Hooper, a business associate of the defendant, the above conversation substantially as it had occurred the night before and the plaintiff confirmed what was said the previous evening.

The defendant testified that when the foregoing conversation occurred he introduced Hooper to the plaintiff as his "associate in business who had come there to bid to protect me"; that at this conversation he asked the plaintiff if he would put the agreement in writing, and the latter agreed that he would do so that afternoon. The foregoing conversation was confirmed by the testimony of Hooper. The defendant further testified that the day after the sale he called upon the plaintiff to obtain the written agreement and was told by him that he had changed his mind, that some one had made him an offer of $20,000 for the property, and had told him that it was worth $22,000, and that he would not sell it to the defendant for $18,000. The defendant lived in the house about three or four months thereafter, paying rent at the rate of $50 a month, but he refused to pay $110 monthly because of the failure of the plaintiff to carry out the agreement. Some time in April, 1927, an accident occurred on the premises by reason of which he vacated the house at the request of the plaintiff. The defendant also testified that in the following July the plaintiff offered several times to convey

the property to him for $18,000, but that, having moved from the premises and having sold his furniture and other goods, and taken a lease of another house, he refused to buy the property. He offered as a witness one Martin, a real estate expert, who testified that in his opinion the fair market value of the property was betweeen $20,000 and $22,000 on January 11, 1927, the date of the foreclosure sale. This evidence was admitted subject to the plaintiff's exception.

"It has repeatedly been held in this Commonwealth, and. elsewhere, that a mortgagee who attempts to execute a power of sale contained in the mortgage is bound to exercise good faith, and to use reasonable diligence to protect the rights and interests of the mortgagor under the contract." *Clark* v. *Simmons*, 150 Mass. 357, 359. *Bon* v. *Graves*, 216 Mass. 440, 446. *Clapp* v. *Gardner*, 237 Mass. 187, 191. The evidence warranted a finding that the plaintiff represented to the defendant that he need not bid on the property or take other action to protect his interests, and that thereby the latter and his representatives were led to believe that it was unnecessary for them to bid at the sale as they would have done except for the false representations of the plaintiff. It could have been found that when the plaintiff promised the defendant before the sale that he would sell him the property for $18,000, he had no intention of doing so, and thereby misrepresented a material fact on which the defendant relied. *Feldman* v. *Witmark*, 254 Mass. 480. It is a reasonable inference from the evidence that the plaintiff never intended to convey the property to the defendant, but that his dominant purpose was to secure the same for himself at his own price, rather than to make a fair sale as he was required to do. *Martin* v. *Hamlin*, 176 Mass. 180. *Lipsohn* v. *Goldstein*, 212 Mass. 144. *Bon* v. *Graves, supra.* If, as the jury could have found, the property which the plaintiff bought at the sale for $400 had a fair market value at that time of between $20,000 and $22,000, it could also have been found that the plaintiff received property equal to or in excess of the amount of the note.

The offer of the plaintiff in July, 1927, to convey the property to the defendant for $18,000, several months after he had

vacated the premises and had removed his household goods therefrom and taken a lease of another house, did not entitle the plaintiff to the direction of a verdict in his favor. The present cause of action accrued when, as could have been found, the plaintiff falsely represented that he would bid off the property and deterred others from bidding, and thereafter refused to convey it to the defendant in accordance with the terms of the agreement.

The exception to the admission of the testimony of Martin, the real estate expert called by the defendant, respecting the fair market value of the property on the date of the foreclosure sale, must be overruled. This evidence was material and pertinent upon the issue whether the sale was conducted by the plaintiff in bad faith or otherwise. The question to the plaintiff as to the amount received by him for the property when he sold it on February 10, 1928, was rightly excluded. The price so obtained was immaterial and could not affect the right of the defendant to show the extent to which he had suffered damage by reason of the bad faith of the plaintiff in conducting the foreclosure sale, nor does it appear to be admissible upon any other ground.

As there was sufficient evidence to show bad faith on the part of the plaintiff in the foreclosure proceedings, the exceptions to the refusal of the judge to direct a verdict in his favor, and to the refusal to give his second and sixth requests, must be overruled. The seventh request was covered by the charge. The eighth request was rightly refused; so far as it was applicable it was covered by the instructions.

*Exceptions overruled.*