ATLAS MORTGAGE COMPANY *vs.* PASQUALE TEBALDI.

Hampden.    September 21, 1939. — December 28, 1939.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Mortgage,* Of real estate: foreclosure.

No invalidity in a sale in foreclosure of a real estate mortgage was shown by evidence that the mortgagee and the mortgagor came to an understanding before the sale that the mortgagee would accept a sum in cash and a new mortgage for the balance; that the terms announced at the sale were "cash in ten days" but the mortgagee's representative then told the mortgagor that the understanding would be carried out if he purchased; and that without requesting an adjournment the mortgagor, after bidding up to a certain amount which was all he could obtain in cash within ten days, allowed the property to be bid in by the mortgagee for a price substantially less than its fair value.

CONTRACT. Writ in the District Court of Springfield dated December 14, 1935.

Upon removal to the Superior Court, the action was tried before *Hurley*, J.

*M. J. Donovan*, for the defendant.

*L. A. Stone*, for the plaintiff.

DOLAN, J. This is an action of contract to recover a balance and interest due on a promissory note for $17,080, secured by a mortgage of real estate, given by the defendant to the plaintiff. The mortgage was foreclosed by sale, and this action is to recover a deficiency remaining after the application of the purchase price received at the sale.

At the trial before a jury the plaintiff introduced the note and rested. The signature was admitted. G. L. (Ter. Ed.) c. 231, § 29. The special defence relied upon by the defendant was that the "sale was conducted improperly, not in good faith and as it should have been conducted, wherefore the plaintiff is not entitled to recover." The jury returned a verdict for the defendant. Thereafter, under leave reserved, the judge ordered the entry of a verdict for the plaintiff in the sum of $3,543.30 (the amount agreed at the trial to be due if the defendant is liable).

The case comes to this court on two bills of exceptions: one containing the defendant's exceptions to the action of the judge in ordering the entry of a verdict for the plaintiff; and the other containing the plaintiff's exceptions to the exclusion of certain evidence, and a statement that, in the event the defendant's exceptions are not sustained, the plaintiff's exceptions are waived.

The evidence material to the exceptions saved by the defendant is as follows: The mortgage given by the defendant to secure his note was in the usual statutory power of sale form. G. L. (Ter. Ed.) c. 183, §§ 8, 18, 21, and appendix. In July, 1935, there being a default in payments on the note, the plaintiff proceeded to foreclose the mortgage. The usual notice was published in a newspaper. The terms of sale stated in the notice were: ". . . $1000.00 will be required to be paid in cash by the purchaser at the time and place of sale as earnest money. Other terms to be announced

at the sale." The notice was signed: "Atlas Mortgage Company, present holder of said Mortgage, by James E. Davis, its President and Treasurer." The name of Troy T. Murray appeared on the notice as attorney for the mortgagee. Prior to and at the time of the sale, one Figoni, an attorney at law, represented both the defendant and the Memorial Realty Corporation, of which the defendant was president, treasurer and principal stockholder.

As the result of a talk with the defendant about two weeks before the sale, Figoni had a conversation with Davis, the president and treasurer of the plaintiff corporation, concerning the proposed foreclosure of the mortgage. In the course of the conversation Figoni inquired whether or not they "could get together," stating in substance that he, Figoni, "understood" the terms of the sale were to be $1,000 in cash and that a mortgage would be taken back on the same terms as the original mortgage. Davis told him that this was "satisfactory." Figoni told Davis he was making the inquiries and arrangements on behalf of the defendant, and that "we had a corporation, and that we were going to bid; the corporation was going to bid"; that "definitely" it was the corporation, the Memorial Realty Corporation, that was being discussed, and not the defendant, Tebaldi. No agreement was made at this conversation in regard to the terms to be announced at the sale. Figoni's "best recollection" was that he saw the published notice before he talked with Davis.

On the day set for the sale, August 22, 1935, Murray, the attorney acting for the plaintiff, postponed the sale for one day because Davis was not present and was not available. The evidence was conflicting concerning whether any terms of sale were announced on August 22. The auctioneer testified that he stated the same terms as were stated the next day. Figoni testified that no terms were announced on August 22. On August 23 there were present only those who had been present the previous day — Figoni, the defendant, the auctioneer, Murray, and two real estate brokers. The terms announced were "$1000 down and the balance in cash in ten days." Figoni then told Murray the

terms were not as he understood they were to be; that he understood there was to be a deposit and a new mortgage; that "we are not prepared at this moment to pay . . . the balance in cash in ten days. If we had known . . . we would have made different arrangements." Murray replied that he knew nothing of plans for a new mortgage and that the terms announced were those that he had been instructed to have announced. Asked whether the sale would proceed despite Figoni's understanding, Murray said the sale would go on. However, he did tell Figoni that any agreement he had made with Davis would be carried out if he purchased the property. Neither Figoni nor the defendant requested an adjournment.

After the bidding started, as a result of a conversation with the defendant, Figoni bid up to $12,800 for the corporation. The property was sold to the plaintiff for $13,000. The fair market value of the property was $18,000. After the bid of $13,000, Murray asked Figoni whether he was going to bid higher. The latter stated: "we are not prepared at this moment to bid any higher than that." The defendant testified that $13,000 in cash was all he could obtain in ten days.

If the defendant had known that a payment of cash within ten days was to be required, he could have removed the default of $2,649.03, there being no acceleration clause in either the note or the mortgage. Although the defendant knew of the foreclosure sale two weeks beforehand, he did not attempt in the meantime to sell the property, but planned to bid at the sale and to buy it "for the corporation."

In executing the power of sale, the plaintiff, in addition to a literal compliance with the terms of the power, was bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor. *Krassin* v. *Moskowitz*, 275 Mass. 80, 82. *Sandler* v. *Silk*, 292 Mass. 493, 496.

The defendant contends that the disparity between the price bid and the fair value of the property, considered in connection with the other circumstances, including especially the fact that the mortgagee became the purchaser, shows bad faith on the part of the plaintiff. In the absence

of bad faith or of improper conduct before the sale or in the way in which the sale is conducted, the mortgagee may buy as cheaply as he can. *Cambridge Savings Bank* v. *Cronin*, 289 Mass. 379, 383. Mere inadequacy of price will not invalidate a sale, even where a representative of the mortgagee is the purchaser, unless it is so gross as to indicate bad faith or lack of reasonable diligence. *Chartrand* v. *Newton Trust Co.* 296 Mass. 317, 321. The disparity here cannot be said to be so great as to invalidate the sale without a showing of bad faith in the exercise of the power of sale. *Ross* v. *Vadeboncoeur*, 298 Mass. 523, 527.

The defendant also contends that such bad faith is shown since the plaintiff, having agreed to take a cash deposit and a new mortgage, failed to notify the defendant before the sale that the terms were to be cash in ten days, and after the announcement of the terms failed to postpone the sale in order to give the defendant an opportunity to comply with the terms or to get the sum necessary to remove the default.

This argument is based on the assumption that at the conversation between Figoni and Davis an agreement was reached concerning the terms of the sale. It does not appear, however, that any agreement was made as to the terms to be announced at the sale. Further, it was made clear that a purchase by the corporation, and not by the defendant personally, was contemplated. However, if it be assumed that Davis should have known that any arrangements made with Figoni acting for the corporation would be brought to the knowledge of the defendant as an individual and that the defendant could rely on such arrangements, still, it cannot be said that the defendant sustained the burden of showing bad faith.

The agreement made with Davis was, so far as appears, informal and unwritten. It was nothing more than an agreement concerning credit. *Bailey* v. *Aetna Ins. Co.* 10 Allen, 286. *Lipsohn* v. *Goldstein*, 212 Mass. 144, 147. *Boyajian* v. *Hart*, 292 Mass. 447, 452. The conversation involved, not the public statement of terms, but rather a private arrangement for credit which might well be made with the mortgagor. When Figoni remonstrated, at the

announcement of the terms, he was told by Murray, the attorney for the plaintiff in charge of the sale, that if he purchased the property, any agreement he had with Davis would be performed. Since the agreement had not concerned the terms to be announced, this assurance was all the defendant could expect or require. The case of *Levey* v. *Higginson*, 266 Mass. 381, is distinguishable, for there the mortgagor relied upon an agreement made with the mortgagee which, it could have been found, the mortgagee never intended to perform.

There was no need of a postponement because, while the announced terms differed from those of the agreement, the defendant was told by the attorney representing the mortgagee that the agreement would be performed. The defendant speaks of a "change in terms." There was no change in the terms. Although the publicly announced terms required a cash payment, the arrangements made with Davis were recognized by the plaintiff's attorney, and the credit arranged was still available to the defendant whether he procured bids to be made for himself or for the corporation. The agreement was not repudiated and all its advantages remained open to him. Any injury he suffered was not the result of a repudiation on the part of the mortgagee, or of a failure to postpone the sale or to notify him of the terms to be announced, but was the result of his own failure to bid on the basis of the agreement.

It might be contended that, though it was open to the defendant to bid with the understanding that he could give a new mortgage rather than pay the entire price in cash, still he believed he would be required to pay in cash, and that therefore the mortgagee, having the duty to obtain the highest possible price for the property, should have postponed the sale so that the defendant could obtain the means to make a higher cash bid or to remove the default. See *Kavolsky* v. *Kaufman*, 273 Mass. 418, 422–423. No postponement, however, was requested (see *Wing* v. *Hayford*, 124 Mass. 249, 253; *Porter* v. *Porter*, 236 Mass. 422, 428), and moreover the mortgagor did not embrace the opportunity to bid on the basis of the agreement after

having been informed that it would be respected, though he testified he had intended to bid more than $13,000. The defendant does not contend that there was not a literal compliance with the terms of the power of sale. The burden was on him to prove the misconduct on the part of the plaintiff which he, the defendant, alleged. *Vahey* v. *Bigelow,* 208 Mass. 89, 93. *Cambridge Savings Bank* v. *Cronin,* 289 Mass. 379, 382.

We are of opinion that the evidence did not warrant the return by the jury of the verdict for the defendant, and that the action of the trial judge under leave reserved in directing a verdict to be entered for the plaintiff was correct.

*Plaintiff's exceptions waived.*

*Defendant's exceptions overruled.*

*Judgment for the plaintiff on the verdict ordered by the judge.*