UNITED STATES GYPSUM COMPANY *vs.* EDWARD B. CARNEY.

SAME *vs.* DAVID STERN.

Middlesex.    December 5, 1935. — February 27, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Deceit. Agency,* Agent's liability to third person. *Savings Bank. Warranty. Assignment.*

The treasurer of a savings bank was personally liable in an action of deceit to the holder of an order on the bank for the payment of money which he had accepted as treasurer in behalf of the bank knowing that such acceptance had not been authorized by the board of investment in accordance with G. L. (Ter. Ed.) c. 168, § 16, and knowing also that the holder was to take the order in payment of a debt relying upon its validity as an obligation of the bank.

In an action of deceit for the defendant's false representation that as treasurer he had authority to bind a savings bank, it was no defence that the plaintiff made no inquiries to ascertain the defendant's actual authority.

The assignor of a nonnegotiable order for the payment of money rightly was found to be liable in tort for an express false representation to the assignee that the order was the valid obligation of the apparent acceptor.

The assignor of a nonnegotiable order on a bank impliedly warranted its validity.

Two actions, the first of TORT and the second of TORT OR CONTRACT. Writs dated October 4, 1934.

In the Superior Court, after the overruling by *Walsh,* J., of demurrers to the declarations, the actions were separately heard by *Morton,* J., who found for the plaintiff in each action in the sum of $5,862. The defendants alleged exceptions.

*A. E. Yont,* for the defendants.

*B. Potter,* (*B. Aldrich* with him,) for the plaintiff.

PIERCE, J.    These are two actions of tort for alleged misrepresentation, arising out of the acceptance of an order of the Lowell Institution for Savings by the defendant Carney, without authority, and the assigning of the order by the defendant Stern to the plaintiff.

In each action the declaration *mutatis mutandis* set out in substance the same facts. The defendant in each action demurred to the declaration, assigning as cause in the action against David Stern, that "The declaration does not state a legal cause of action as the plaintiff seeks to recover from the defendant because it alleges that he represented that he had authority from the Lowell Institution for Savings to make arrangements for completion of the building and to obligate the bank for such purpose, and that thereby he became bound by reason of his representations that he had such authority; Whereas the defendant says that the authority to obligate the Lowell Institution for Savings was limited by the laws of the Commonwealth of Massachusetts, that the plaintiff was bound to know such limitations, and that no cause of action has accrued to the said plaintiff." The defendant in the action against Edward B. Carney assigned as cause of demurrer that "The declaration does not state a legal cause for action as the plaintiff seeks to recover from the defendant because it alleges that he accepted an order drawn on the Lowell Institution for Savings and thereby became bound by reason of his representation that he had such authority; Whereas the defendant says that the authority to obligate the Lowell Institution for Savings was limited by the laws of the Commonwealth of Massachusetts, that the plaintiff was bound to know such limitations so that no cause of action has accrued to the said plaintiff." These demurrers were overruled and in each action the defendant duly filed exceptions.

The declarations are not here set forth in full because the same issue on the facts, hereafter stated, is raised in each action by the answers to the declaration and by the requests for rulings. The actions were not tried together, but were heard one immediately after the other, without a jury in the Superior Court. The trial judge filed a single statement with his findings against each defendant for the same amount. Separate bills of exceptions have been filed but for convenience the parties have each agreed to and have filed one brief. At the trial on the merits in both

cases the plaintiff called one witness only. The defendants offered no evidence but filed requests for rulings, which were denied subject to the defendants' exceptions duly saved.

The pertinent facts, warranted by testimony of the witness Lloyd Yeager, in substance, are as follows: The plaintiff is a corporation part of whose business is the construction of fireproof roofs and other parts of buildings. Yeager is in charge of the New England branch of this business, and for ten years had been responsible for contracts for fireproofing. Sometime in 1928 he had a conversation with one Segel whose wife Hannah Segel owned a theatre building at 144 Humboldt Avenue, Roxbury, in relation to the building of a gypsum roof on the Humboldt Avenue property; but he made no contract in reference thereto. The Lowell Institution for Savings (hereinafter called the bank) held a construction mortgage on the property. In June, 1930, at Segel's request, Yeager went to the house of the defendant Stern. Stern told him that he represented the bank and handled all the mortgages in Boston and vicinity. The terms of a proposed contract for a roof and ceiling on the Humboldt Avenue property were discussed. Yeager and Segel had previously considered the construction of the roof and ceiling. Segel asked Stern his opinion as to whether or not it would be satisfactory for Segel to enter into such contract with the plaintiff. Stern looked the contract over and said so far as he could see on the face of it there was nothing out of the way about it. Stern asked Segel what it would cost him to complete the building, and Segel did not know. Stern suggested that Segel go out and get figures for the completion of the work, that is, for work other than what the plaintiff had already proposed doing.

On September 11 or 12, 1930, Yeager again saw Segel at Stern's house, where Stern produced an order drawn on the bank to the order of Stern, in the amount of the proposed contract ($4,650) between the plaintiff and Segel. This order reads as follows: "To Lowell Institution for Savings, Lowell, Mass. Gentlemen: — Pay to the order of DAVID

STERN Four Thousand Six Hundred Fifty Dollars ($4650.);
payable thirty (30) days after full completion of gypsum
and sheetrock work on the hall and theatre building now
under construction on Humboldt Avenue, Roxbury, said
building being part of the real estate described in a certain
mortgage deed to you, dated Dec. 18, 1929, and recorded
with Suffolk Deeds, Book 5155, Page 25; said work to be
done in a manner satisfactory to you; said sum to be ap-
plied as an advancement on account of principal amount
loaned on my mortgage note to you for $50,000., secured
by said mortgage and for which I hereby constitute this
order a receipt. Witness my hand this twentieth day of
June, 1930. s/ HANNAH SEGEL. I hereby approve and
assent to the foregoing order. s/ LOUIS SEGEL. Witness
to signatures Of Hannah Segel and Louis Segel. s/ LOUIS
STERN. Accepted June 24, 1930. LOWELL INSTITUTION
FOR SAVINGS. s/ By EDWARD B. CARNEY, Its Treasurer.
September 19, 1930. In consideration of one dollar ($1.00)
and other valuable consideration to me paid by United
States Gypsum Co., I hereby assign, transfer and set over
unto the United States Gypsum Co. all my right, title and
interest in and to the within order and all benefits to be
derived therefrom. s/ DAVID STERN. September 19, 1930.
The above assignment is hereby assented to. s/ HANNAH
SEGEL. s/ LOUIS SEGEL."

When the order was presented by Stern there was no
writing or printing on it below the words "Its Treasurer."
Yeager asked Stern how it was that the bank had arranged
to make payment through him, that is, through David
Stern. Stern said that he realized that Segel had no money
and that the bank had arranged and was willing to pay
the money to David Stern because they questioned Segel's
ability to handle the financial transaction. Yeager, who
had not previously closed a contract with Segel because he
doubted his financial worth, told Stern that he could not
give him a definite answer as to whether or not the order
would be acceptable before consulting the New York office
of the plaintiff. Stern said in all probability the order
would be accepted, "that it was a document on which we

(United States Gypsum Company) could collect; we could present it to the bank; we could collect our money thirty days after we had completed the building in accordance with the provisions of the contract." On that day or the next day Yeager wrote a letter to the New York Office, and on September 19, 1930, met Stern at his home. At that time the witness wrote the assignment which appears at the bottom of the order, above set out, and Stern assented to it and signed it in the presence of the witness; Louis Segel also signed in the presence of the witness.

Sometime after the assignment was completed, on October 16, 1930, the plaintiff entered into a contract with Segel for the erection of a roof at the Humboldt Theatre, and when it entered into the contract it relied for payment on the original order. The roof was completed by the plaintiff about April 1, 1932, and demand was made on the bank for payment on May 1, 1932, but the bank refused to pay the order.

In the case against Edward B. Carney, the defendant contends that the plaintiff has no right of action in tort for the implied misrepresentation of Carney that he had authority to accept the order, because Carney admittedly had no communication with the plaintiff until after the execution of the order; and that the plaintiff's remedy, if any, must arise solely on the theory that one who purports to act as agent for a principal, where he is not authorized to, makes himself personally liable in tort. *Jefts* v. *York*, 10 Cush. 392, 395. *Peoples National Bank* v. *Dixwell*, 217 Mass. 436. It was agreed at the trial by counsel "that in a suit by the present plaintiff against the Lowell Institution for Savings it was found that Carney's signature on the order (Exhibit 1) was not authorized by the board of investment and therefore did not bind the bank." G. L. (Ter. Ed.) c. 168, § 13, provides that a savings bank shall have a board of investment of not less than three; and § 16 thereof provides that the board of investment "shall approve all loans . . . all changes in the property or security"; and "may approve changes of collateral, . . . either by a vote . . . or by signing a statement."

The case falls within the rule that "He [an agent making a contract for a disclosed principal] does not become liable by reason of the failure of the principal to perform, unless he contracts or represents that the principal has capacity or unless he has reason to know of the principal's lack of capacity and of the other party's ignorance thereof." Am. Law Inst. Restatement: Agency, § 332. In the case at bar the judge found as a fact that "Carney's signature on the order accepting it was without proper authority and known by him to be without such authority." There is no direct evidence in the record to support this finding, but it was a reasonable inference to be drawn from the fact that Carney was treasurer of the bank and accepted the order for the bank. It could be assumed by the plaintiff that Carney knew when he accepted the order whether or not the board of investment had approved the contract; and it could assume properly that the board of investment had authorized and delegated to Carney, as treasurer of the bank, the power to sign the acceptance in behalf of the bank.

The defendant, however, contends that the plaintiff could not rely on the implied misrepresentation of Carney that he had authority to accept the order in behalf of the bank because the instrument was nonnegotiable, and the plaintiff by proper inquiry could have ascertained whether or not the board of investment had approved the order calling for a payment before it was due under the construction contract with Segel. It is plain that the plaintiff, while bound to know the law, was not bound to know whether in fact the order was approved by the board of investment. *Conant v. Alvord*, 166 Mass. 311. The fact that the defendant's lack of authority might have been discovered by inspecting the bank's records or by inquiry of the board of investment does not mean that the plaintiff omitted to pursue such investigation at its peril. *David v. Park*, 103 Mass. 501. *Lynch v. Palmer*, 237 Mass. 150. *Charbonneau v. Rokicki*, 278 Mass. 524. The issue here relates to a misstatement of fact as to Carney's authority, and in no wise charges a misstatement of law. See *Kerr v. Shurtleff*, 218 Mass. 167; *Jekshewitz v. Groswald*, 265 Mass. 413; *Jason v. Jason*, 289 Mass. 72,

78.   The defendant is no more entitled to say that the plaintiff should have discovered him to be without authority than has any other agent who has misrepresented his authority.   *Conant* v. *Alvord*, 166 Mass. 311.   The case at bar is distinguishable from *Lemery* v. *Twombly*, 281 Mass. 93, in that the representation was there made by a public official with regard to his authority to bind a municipality.

The defendant's request for a ruling that "No direct representations as to his authority to accept the order was made by the defendant [Carney] to the plaintiff" manifestly was a request in form at least for a finding of fact.   Assuming that it had been found as a fact it would not have affected the plaintiff's case.   When Carney accepted that order he knew the plaintiff was going to rely on it.   In September, 1930, before the contract between Segel and the plaintiff was executed, the plaintiff wrote Carney asking him "if he was agreeable to the order which had been drawn on the bank to David Stern and made payable to the United States Gypsum Company; the letter was written to Lowell Institution for Savings, Attention Mr. Carney."   When Carney accepted the order he knew that the plaintiff was going to rely on it.   He knew that Stern was going to assign the order to the plaintiff and that the plaintiff was going to build the roof, looking to the bank for payment.   He cannot escape liability on the ground that he never saw in person any agent of the plaintiff.   *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437.

With one exception, the same questions above discussed were involved in the action against David Stern, and they will not be further considered.   The action against Stern is not based upon the principle that one purporting to act for a principal may be found to have made a representation of the capacity of the principal, although he made no specific statement to that effect.   The action is founded on his actual representation that the order was valid, and his implied representations arising out of the act of his assignment to the plaintiff, either or both.   There was testimony that Stern told Yeager that the order "was a document on which we

. . . [the plaintiff] could collect; we could present it to the Bank; we could collect our money." The judge refused to give the defendant's request that "the defendant made no representation to the plaintiff as to the validity of the order except such as may be inferred from the fact that he made the assignment." The order was complete on its face by the acceptance of Carney at the time of the assignment and Stern's conversation with Yeager. It is obvious that the defendant made an express representation as to its validity. The assignor of a nonnegotiable order impliedly warrants its validity. *Flynn* v. *Allen*, 57 Penn. St. 482. *Kingsley* v. *Fitts & Avery*, 55 Vt. 293. Williston on Contracts, § 445. Compare *Eaton* v. *Mellus*, 7 Gray, 566.

We find no error in the overruling of the demurrer in each case, nor in the refusal to give the requested rulings. In each case the exceptions are overruled.

*Exceptions overruled.*