LOUIS SCHLEIFER *vs.* WORCESTER NORTH SAVINGS
INSTITUTION.

Suffolk.   February 9, 1940. — June 7, 1940.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Deceit.   Savings Bank.*

A finding for the plaintiff in an action of tort for deceit against a savings
bank would be warranted by evidence that its president, acting for
the bank and within the scope of his authority throughout, represented
to the plaintiff, who was considering taking a twenty-one year lease
of property on which the bank held a mortgage and who sought the
bank's attitude in the matter, that the bank's "directors" had voted
to extend the mortgage for ten years and to increase it so that arrears
of interest and taxes might be paid, as a result of and in justifiable re-
liance upon which representation the plaintiff took the lease, made a
deposit and spent money for repairs, but that the bank had not voted
as the president represented and had intended not to extend nor to
increase the mortgage, and a few weeks later foreclosed the mortgage
thus causing the plaintiff to lose what he had spent.

CONTRACT OR TORT.   Writ in the Superior Court dated
August 18, 1938.

The plaintiff alleged an exception to the ordering of a
verdict for the defendant by *Beaudreau,* J.

*H. Singer,* for the plaintiff.

*D. J. Lyne,* (*W. A. Ryan* with him,) for the defendant.

QUA, J.   After the plaintiff waived a count in contract,
the judge directed a verdict for the defendant upon the
plaintiff's opening on his count in tort for deceit.   The
question is whether the opening stated a cause of action
under the latter count.

The substance of the opening, so far as it is necessary to
state it for the purpose of this decision, is this: In March,
1933, General Luggage Corporation owned a large mill
building in Fitchburg which was in a run down condition
and practically vacant, and upon which the defendant held
a mortgage for $90,000.   The luggage corporation, act-
ing through one Williams, had interested the plaintiff in a

proposition that the plaintiff should take a twenty-one year lease upon the building, repair it, and make it a success. The plaintiff desired to know the attitude of the bank as mortgagee. The plaintiff and Williams then called upon one Brown, who was president of the bank, and who had been informed of the pending negotiations. Brown said it would be a splendid thing for the building if the plaintiff would take a lease. He told the plaintiff and Williams that he was very sure that the bank would extend the mortgage for ten years and increase it by $25,000, so that arrears of taxes and interest could be paid, that he would give a "definite, final and formal answer" after a meeting of the "directors or trustees" to be held that afternoon, and that he would take the matter up with the trustees and with the "board." Later in the day Brown told the plaintiff and Williams that the "directors" had voted to extend and to increase the mortgage as set forth above. Brown also told the plaintiff that the plaintiff might consider the taxes and interest paid, and that Brown would advance the $25,000 as soon as the lease was signed, and told Williams in the presence of the plaintiff that Williams might give the plaintiff a letter stating that the interest and taxes were paid. In fact the bank had not voted to extend or to increase the mortgage. The defendant throughout intended not to extend and not to increase the mortgage, and foreclosed it a few weeks afterwards, so that the plaintiff, who had entered into a lease and paid a deposit of about $12,500 and "some twenty-five hundred dollars more" in reliance upon Brown's statements, lost these sums and the moneys expended by him in the meantime in making repairs. Brown was acting for the bank throughout and made the misrepresentations within the scope of his authority.

This opening states directly or by reasonable inference all necessary elements of a cause of action for deceit. If true, it shows that the defendant's president as the defendant's agent made, as of his own knowledge, a material representation of fact which could be understood to mean that the proper officers had voted to extend and to increase the mortgage. It shows that the president knew that the

plaintiff desired this information as a basis of possible action on his part and therefore by inference that the defendant's president intended that the plaintiff should act upon it; that the representation was false; and that the plaintiff did act in justifiable reliance upon it and suffered loss in consequence. Am. Law Inst. Restatement: Torts, §§ 525, 526, 531, 537, 538, 546. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574. *Bates* v. *Cashman*, 230 Mass. 167. *Alpine* v. *Friend Bros. Inc.* 244 Mass. 164, 167. *Harris* v. *Delco Products, Inc.* 305 Mass. 362, 364. The opening, if true, would support the further claim that the defendant, through its authorized representative, made false and fraudulent representations of fact as to its own intention in the matter, upon which representations the plaintiff justifiably relied to his damage. Am. Law Inst. Restatement: Torts, §§ 530 and comments, 544. *Dow* v. *Sanborn*, 3 Allen, 181. *McCusker* v. *Geiger*, 195 Mass. 46, 54. *Commonwealth* v. *Althause*, 207 Mass. 32, 47, 48. *Comstock* v. *Livingston*, 210 Mass. 581, 583, 584. *Donovan* v. *Clifford*, 225 Mass. 435. *Ciarlo* v. *Ciarlo*, 244 Mass. 453, 456. *Feldman* v. *Witmark*, 254 Mass. 480. *Levey* v. *Higginson*, 266 Mass. 381, 385.

The defendant contends that its president had no authority to grant or extend loans and therefore no authority to represent that a loan had been or would be granted or extended, and that the plaintiff could not justifiably rely upon such representations by him. The defendant cites provisions of the statutes which require written applications for loans to be approved by the board of investment. G. L. (Ter. Ed.) c. 168, §§ 16, 54, First, as amended. But the plaintiff in his opening offered to show that the president of the defendant did have authority to make the representations which he is alleged to have made. It would seem that someone in a savings bank might have authority to inform interested persons as to the granting and extension of loans and to discuss such matters with them. We cannot set up a rule of law that such authority may not be delegated to the president or habitually exercised by him

with the consent of the bank. *Lonergan* v. *Highland Trust Co.* 287 Mass. 550, 555–559. *Federal National Bank of Boston* v. *O'Connell*, 305 Mass. 559, 565–566. See *Commonwealth* v. *Reading Savings Bank*, 133 Mass. 16, 19; *Holden* v. *Upton*, 134 Mass. 177, 179; *Jewett* v. *West Somerville Co-operative Bank*, 173 Mass. 54; *Slattery* v. *North End Savings Bank*, 175 Mass. 380, 381; *Newburyport Institution for Savings* v. *Brookline*, 220 Mass. 300, 306. Nor can we say as matter of law that the plaintiff was not justified in relying upon the president's statements. He could reasonably believe that the statutory requirements had been complied with. *United States Gypsum Co.* v. *Carney*, 293 Mass. 581, 586. Am. Law Inst. Restatement: Torts, §§ 537, 540. Doubtless the statutes to which the defendant refers do shield a savings bank against contractual obligations not incurred in accordance with them, *Gilson* v. *Cambridge Savings Bank*, 180 Mass. 444, *Jones* v. *B. F. Butler Coöperative Bank*, 254 Mass. 82, but in the absence of appropriate language we are not authorized to extend their operation so as to exempt savings banks from liability for deceit or other torts under rules of law applicable to persons and corporations in general. In *Reed* v. *Home Savings Bank*, 130 Mass. 443, 445, a savings bank was held liable for malicious prosecution. It is bound by a false certificate of its secretary as to its records. *Commonwealth* v. *Reading Savings Bank*, 137 Mass. 431. The case of *Stoneman* v. *Fox Film Corp.* 295 Mass. 419, is plainly distinguishable. There, after a trial, the evidence was held insufficient.

If we assume that the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fourth, would have been a defence to an action against the bank for breach of contract, it is not a defence to this action of tort. *Des Brisay* v. *Foss*, 264 Mass. 102, 110. *Levey* v. *Higginson*, 266 Mass. 381. *Nanos* v. *Harrison*, 97 Conn. 529, 532–535. *Vertrees* v. *Head & Matthews*, 138 Ky. 83. *Lamm* v. *Port Deposit Homestead Association*, 49 Md. 233, 240. *Welch* v. *Lawson*, 32 Miss. 170. *Busick* v. *Van Ness*, 17 Stew. 82, 84, 85. *Rice* v. *Manley*, 66 N. Y. 82. *Burgdorfer* v. *Thielemann*, 153 Ore. 354, and cases cited. Am. Law Inst. Restatement: Torts, § 530, com-

ment b.  For a recent review of the cases see note in 104 Am. L. R. 1420.  There are, however, cases the other way. *Sachs* v. *Blewett*, 206 Ind. 151.  *Cassidy* v. *Kraft-Phenix Cheese Corp.* 285 Mich. 426, 435 *et seq.*  *Kiser* v. *Richardson*, 91 Kans. 812.  We do not regard the case of *Dawe* v. *Morris*, 149 Mass. 188, as a binding authority against the plaintiff on this or other points in this case.  That decision was made before the recent cases hereinbefore cited holding a false representation of intention to be an actionable tort. It proceeded upon the theory that the injury to the plaintiff resulted from the nonperformance of a promise, and that there was "no other wrong than such non-performance." Page 193.  See also *Boyd* v. *Stone*, 11 Mass. 342, 348, 349. In the present case we think that the plaintiff's opening, if adequately supported by proof, would warrant a finding that the defendant's representations of fact, including intention, did constitute a wrong other than mere breach of a promise and started the whole chain of events which led to the plaintiff taking the lease, expending money upon it, and suffering loss.  See *Lyman* v. *Romboli*, 293 Mass. 373.

In this opinion we have assumed throughout, as we are bound to assume, that the plaintiff could prove by evidence both the specific and the general assertions of his opening. At the trial he must, of course, introduce evidence to establish each necessary step in making out his case, and if he succeeds in this he must also satisfy the jury that he has sustained the burden of proof upon each point, including the proximate cause of his loss.

*Exceptions sustained.*