LOUIS SCHLEIFER *vs.* WORCESTER NORTH SAVINGS
INSTITUTION.

Suffolk.    May 16, 1941. — October 30, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Deceit. Agency,* Scope of authority or employment. *Corporation,* Officers
and agents. *Savings Bank.*

Evidence of the customary conduct of the president of a savings bank,
its executive officer, warranted a finding that he had ostensible au-
thority in its behalf to make a representation, to one negotiating
with it for the first time but after the negotiations had been in prog-
ress several months, that its board of investment had taken certain
action with respect to the subject matter of the negotiations.

A verdict for the plaintiff in an action of deceit against a savings bank
was warranted by evidence that an officer of the bank, acting within
his ostensible authority, falsely represented to the plaintiff, a pro-
spective lessee of property on which the bank held a defaulted mort-
gage, that its board of investment had voted to extend the mortgage
and to lend an additional amount to cure the default; and that in
reliance on the misrepresentation the plaintiff executed a lease of the
property and thereby incurred loss.

CONTRACT OR TORT.    Writ in the Superior Court dated
August 18, 1938.

At the second trial of the action before *Brown,* J., there
was a verdict for the plaintiff in the sum of $5,000.

*D. J. Lyne,* (*W. A. Ryan* with him,) for the defendant.

*H. Singer,* for the plaintiff.

DOLAN, J.    This is an action of tort for deceit in which
the plaintiff seeks to recover for damage sustained by him
as a result of alleged misrepresentations by the president
of the defendant bank.    The case was here before on excep-
tions to the action of the judge at a prior trial in directing
a verdict for the defendant on the plaintiff's opening on his
count for deceit, the count in contract having been waived.
At that time the plaintiff's exceptions were sustained.
*Schleifer* v. *Worcester North Savings Institution,* 306 Mass.
226.    The case comes before us, after a second trial, upon

the defendant's exceptions to the denial of its motion for a directed verdict in its favor.

There was evidence to warrant the jury in finding the following facts: In 1931 the title to a certain parcel of real estate, located in Fitchburg in this Commonwealth, was acquired by the General Luggage Corporation. The property was held by it subject to a mortgage of $115,000 to the defendant bank. No interest on the mortgage or taxes had been paid after the corporation acquired the property. To better its condition with relation to the property the luggage corporation, by one Williams, its president, late in 1932 began negotiations with the plaintiff looking toward a long term lease of the premises to him. Williams informed the bank of these negotiations through one Brown, the bank's president, early in 1933. In May, 1933, "the indebtedness of the corporation to the bank had risen from $115,000 to something over $138,000."

Brown became president of the defendant bank, hereinafter referred to as the bank, on January 1, 1933. Prior thereto and since 1912 he had served as its treasurer. He received a substantial salary, gave all his time to the bank's affairs, and was the only officer whose desk was located in the "front" part of the bank's premises. An amendment to article 9 of the by-laws of the bank, adopted upon the accession of Brown to the office of president, provided that he should preside at the meetings of the corporation and of the board of trustees and should be "ex-officio a member of the Board of Investment." The amendment further provided that he should be the executive officer of the bank and should have and exercise the general supervision and management of all of the powers given to the treasurer by the by-laws and by statute "unless such authority is inconsistent therewith." Under articles 14 and 15 of the by-laws it was provided that "The Board of Investment shall have the investment of all moneys of the Bank, in which they shall be governed by the Statutes of the Commonwealth and the Rules established by the Board of Trustees," but that the treasurer "shall not pay out any money loaned upon real estate until the certificate of the Committee of

the Board of Investment shall have been duly filed and the papers approved by the Solicitor." Under article 12, it was provided that the clerk "shall keep a faithful record of the doings of the corporation at their meetings, and also of the Board of Trustees."

During 1933 Brown handled much of the correspondence of the bank and talked with many persons who desired to do business with the bank. He often discussed loans with applicants and received applications therefor, which he would frequently refer to the board of investment. At the trial he was unable to point out any instance in which the board had declined to follow his recommendations with regard to a loan. "Most of the applicants for mortgage loans talked only to Mr. Brown and no one else." In some instances applications for loans were rejected by him without referring them to the board of investment. " It was customary for . . . [him] to tell people what the board had done."

Brown had negotiated the transaction when the luggage corporation acquired the premises in question in 1931 and gave the bank a purchase money mortgage in the amount of $115,000. In March, 1933, he notified an attorney for the luggage corporation that the board had voted to take no action on a proposal of that corporation to lease the premises and its request for continued coöperation of the bank for the rest of the year. The "board" had so voted on March 7, 1933.

The plaintiff, a real estate broker and operator, is a resident of New York. He was not acquainted with Brown before he commenced negotiations with Williams relative to leasing the property. He first met Brown "in December of 1932 or January of 1933." He talked with him on three or four occasions on the subject matter of the proposed lease. During the late winter and spring of 1933, lengthy negotiations took place between Williams, his attorney, and Brown concerning an adjustment of the financial relations of the corporation and the bank on a more stable basis. These negotiations took place both by mail and in person, and Williams kept the plaintiff fully informed of their

progress. In March, 1933, Williams showed Brown a rough draft of a proposed lease and told him that he had a prospective lessee. Brown suggested the insertion of an "inflation clause" in the lease and that the deposit under the lease should be paid to the bank. Williams told him the deposit would have to be paid to the broker. Later in March Williams and the plaintiff talked with Brown at the bank. The plaintiff then stated that he could not make a lease unless the default in the mortgage was cured. Brown said that the bank would coöperate.

At a meeting between Williams and the plaintiff and Brown at the bank in April, 1933, the plaintiff informed Brown that a lease had been agreed upon, and that the only thing he was concerned about was an extension of the mortgage. At this conference Brown told the plaintiff that the mortgage would be extended for ten years, and that an additional $25,000 would be lent by the bank to take care of all arrears. He added that if they (the plaintiff and Williams) wanted to be sure they could come back in a few hours after the board meeting. They did so and Brown then informed them that the "Board of Directors [sic] . . . had voted to advance an additional $25,000 and would extend the mortgage for ten years." Relying on Brown's representations the plaintiff signed a lease of the premises on May 1, 1933, and shortly thereafter took possession of the property. In fact, the board had not voted to extend the mortgage or to advance further funds, and the luggage corporation had never made any application for the loan in writing in accordance with G. L. (Ter. Ed.) c. 168, § 16; § 54, First. The plaintiff was not aware of these facts and made no inquiries as to Brown's authority or the by-laws of the bank. On May 19, 1933, the board of investment considered the "'proposed lease' by General Luggage Corporation and voted to take no action." At the time of the execution of the lease the plaintiff, in accordance with its terms, deposited $12,541.66 with the luggage corporation to secure performance of his covenants thereunder. None of this money has been returned to him. He also expended $1,000 for repairs and alterations. Fore-

closure proceedings were commenced by the bank on June 13, 1933, and after they were completed the attorney for the bank wrote to the plaintiff under date of July 18, 1933, requesting him to leave the premises. The plaintiff then left the premises.

There was also evidence that the plaintiff had "lined up six prospective tenants; that if Brown's statements were true he [the plaintiff] could make $15,000 or $20,000 a year"; that "his lease on May 1, 1933, was worth between $65,000 and $75,000"; and that he believed Brown, and acted in reliance upon his representations as to the action of the board.

After denying the defendant's motion for a directed verdict the judge submitted to the jury the following special question: "At any time prior to May 1, 1933, did Mr. Brown say to the plaintiff in words or in substance that the Board of Investment of the defendant had voted to extend the mortgage held by it upon the property in question for ten years and to advance an additional $25,000?" The jury answered "Yes."

There is no material variance between the facts set forth, which the jury could find properly on the evidence, and those stated by the plaintiff in his opening at the prior trial which, when the case was here before, were held sufficient, if proved, to warrant a finding by the jury for the plaintiff on the count in tort for deceit. *Schleifer* v. *Worcester North Savings Institution,* 306 Mass. 226. The principles of law applicable to the facts which the jury could find are fully set forth in that case with ample citation of authorities. To recite those principles in detail here would serve no useful purpose. On the evidence the jury could find properly that Brown had wide actual authority in the supervision and management of the bank; that in his dealings with Williams and the plaintiff he was engaged in ordinary routine business of the bank concerning negotiations for loans and mortgages; that he was a member of the board of investment; that he had habitually interviewed applicants for loans; that his recommendations regarding them were invariably followed by the board of investment; that he

notified applicants of the dispositions made of their applications by the board; that he made the representations in question to the plaintiff; that the plaintiff relied upon them to his damage; and that Brown had ostensible or apparent authority to make them in behalf of the defendant. There is nothing in the record to show that Brown was without authority to notify those seeking loans of the decisions of the board. On the contrary, the jury could find that Brown had been held out to the community where the bank was located and to its customers as having sweeping authority even with reference to making known the votes of the board.

That the plaintiff was a resident of New York and had never dealt with the bank before is not decisive. The question whether Brown was clothed with ostensible or apparent authority is one of fact. *Federal National Bank of Boston* v. *O'Connell,* 305 Mass. 559, 566. The jury could find that the negotiations between Brown and the plaintiff were carried on for over four months, during which the plaintiff conferred with Brown at the bank on a number of occasions, and that Williams had dealings with the bank through Brown over a considerable period of time, including negotiations concerning the proposed lease of which he kept the plaintiff advised. In these circumstances we think the jury were not required to find that Brown had not been held out to the plaintiff by the bank as having ostensible or apparent authority to deal with him in the manner before recited.

It is true that the evidence would require findings that no application was made in writing for a further loan as required by G. L. (Ter. Ed.) c. 168, § 16; § 54, First, as amended; but it cannot be said as matter of law that the plaintiff was not justified in believing that the statutory requirements had been complied with, as well as any by-laws of the bank relating to the granting of loans or extensions of mortgages. As is said in *Schleifer* v. *Worcester North Savings Institution,* 306 Mass. 226, at page 229, "Doubtless the statutes to which the defendant refers do shield a savings bank against contractual obligations not

incurred in accordance with them . . . but in the absence of appropriate language we are not authorized to extend their operation so as to exempt savings banks from liability for deceit or other torts under rules of law applicable to persons and corporations in general."

The evidence would warrant the jury in finding that the plaintiff had sustained the burden of proving that, in reliance upon the manifestations of ostensible or apparent authority of Brown and his misrepresentations as to the action of the board of investment of the bank with relation to an extension of the mortgage on the premises involved and a further loan thereon, he executed the lease involved, that he was damaged in consequence, and that the proximate cause of his loss was the misrepresentations. *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226, and cases cited.

The denial of the defendant's motion for a directed verdict was right.

*Exceptions overruled.*