NELLIE FLYNN *vs.* SOUTH MIDDLESEX CO-OPERATIVE
BANK
(and a companion case [1]).

Middlesex. February 8, 1944. — September 11, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Repairs, Landlord's liability to tenant or his family
or his invitee.

An agreement made by the landlord in a letting at will, that he would
keep the premises "in the same safe and livable condition it is in,"
was merely an agreement to make repairs on notice, and the tenant's
wife could not recover from the landlord in tort for personal injuries
sustained through failure to repair defective stairs on the premises.

TWO ACTIONS OF TORT. Writs in the Superior Court
dated December 11, 1940, and August 6, 1941, respectively.

The cases were tried before *Hanify,* J.

*Nicholas Fusaro & Nunziato Fusaro,* for the plaintiffs,
submitted a brief.

*G. B. Rowell,* for the defendant.

DOLAN, J. These two actions of tort to recover compensation for personal injuries and consequential damages come
before us on the plaintiffs' exceptions to the granting of the
defendant's motion in each case for a directed verdict in
its favor and to the admission of certain evidence.

There was evidence that early in the year 1932 the plaintiffs were the owners of a five-room cottage in Framingham.
In 1926 the defendant lent the plaintiffs $3,300 on a promissory note secured by a mortgage of the premises. By the
terms of the note monthly payments were required. Late
in 1932, being in default with respect to the payments, the
plaintiff Edward (hereinafter referred to as Flynn) called
upon the treasurer of the defendant and, as a result of a
conversation with her, the plaintiffs deeded the property to
the defendant. In January, 1933, in response to a notice
from the defendant, Flynn called at the banking offices of

---

[1] The companion case is by Edward F. Flynn against the same defendant.

the defendant and talked with one Shea, a director of the bank. In response to Shea's inquiry Flynn said that he wanted to continue to live in the premises if conditions were right. Shea said that the rent would be $25 a month. Flynn asked about repairs and Shea said: "We will keep it in the same safe and livable condition it is in." On May 4, 1940, the plaintiff Mrs. Flynn "was going up . . . [the] rear stairway" and "had gotten to the top step, and it broke." One of her legs went through the tread and she fell over on her left side to the ground and was injured. The joist underneath "that" tread was rotten and broke in halves. "A good ten or twelve inches [square] of that tread . . . was broken." This condition of decay had been observed by Flynn about February 1, 1940. The top riser was decayed and had fallen out and the steps had sagged away about an inch or two inches from the house. Mrs. Flynn knew that the "boards were rotten." At the time that the plaintiffs became tenants of the defendant the rear stairway was in a good safe condition. After the accident Mrs. Flynn notified Mrs. Gorman, the defendant's treasurer, and the stairs were fixed on May 6, 1940. Mrs. Flynn testified that from February 1, 1940, to the date of the accident no repairs had been made of the premises; that in 1935 the steps were "bad"; that she notified the defendant's treasurer, Mrs. Gorman; that she sent somebody to fix them; that from 1935 on, she (Mrs. Flynn) did not tell Mrs. Gorman that there was some other work that needed to be done in the house; and that after "the damage caused by the hurricane . . . [Mrs. Flynn] never requested any further repairs to be made to the house." But she also testified that in February before the accident the defendant repaired the cellar stairs and that in that month she notified Mrs. Gorman that some plumbing in the house needed fixing. That might have been the year before. There was no evidence, however, to show that from 1935 to the date of the accident the defendant was ever notified by either of the plaintiffs of any defect in the stairs upon which Mrs. Flynn fell and was injured. There was evidence that on two or more occasions after the letting the

defendant made certain repairs without notice from the plaintiffs. The plaintiffs make no contention other than that under the terms of the letting the defendant was bound to keep the premises in the same condition they were in at the time of the letting on its own responsibility without notice from the plaintiffs.

During the course of the trial certain of the defendant's by-laws relative to the duties of directors, of whom Shea was one at the time of the letting, were offered in evidence by the defendant and admitted subject to the plaintiffs' exceptions. So far as pertinent they provide: "Article VI. . . . Section 2. Duties of Directors. The Board of Directors shall manage the business and affairs of the corporation. . . ." "Article V. . . . Section 7. Quorum for Shareholders' and Directors' Meetings. Five members or a majority of the Board of Directors shall constitute a quorum of the Board of Directors." "Article VII. . . . Section 4. Duties of the Security Committee. The Security Committee shall examine all real estate offered as security for loans. A written report thereon shall be made by at least two members of the Security Committee, signed by them, approving the security thereon, and certifying to the bank on the property, according to their best judgment." "Article 6. . . . Section e. Treasurer and Assistant Treasurer. The Treasurer shall be the executive officer of the corporation unless the duties of the executive officer are conferred upon the President or Vice-President by a special vote of the directors." There was no error in the admission of this evidence. It bore directly upon the question of the authority of the director Shea to bind the defendant by the alleged promises. The by-laws were not, however, conclusive as to that subject, and it was still open to the plaintiffs to show by extrinsic evidence that Shea had ostensible or apparent authority to enter into the agreement with the plaintiffs for the letting. See *Federal National Bank* v. *O'Connell*, 305 Mass. 559, 565, 567, and cases cited; *Schleifer* v. *Worcester North Savings Institution*, 306 Mass. 226, 228–229, and cases cited, *S. C.* 310 Mass. 110, 114–115. But even though it be assumed for the purposes of the cases, without so deciding,

that a finding would be warranted that Shea did have actual or ostensible authority to agree in behalf of the defendant to keep the premises in the same safe and livable condition as they were in at the time of the letting, nevertheless the action of the judge in directing a verdict for the defendant in each case was right, since we are of opinion that under the terms of the agreement the defendant as matter of law was not obliged to make repairs except upon notice, and that there was no evidence to warrant a finding that either of the plaintiffs notified the defendant of the defective condition of the stairway in question.

The decisive principles of law governing agreements such as that relied upon by the plaintiffs in the present cases are well settled. In *Fiorntino* v. *Mason*, 233 Mass. 451, and *Ryerson* v. *Fall River Philanthropic Burial Society*, 315 Mass. 244, following many other similar decisions of this court, the governing principles are fully stated. To repeat those principles in detail would add nothing to our jurisprudence. It is sufficient to say, as is pointed out in the cases just cited, that in the second class of cases therein referred to, of which the present cases are examples, a mere agreement that the landlord will keep the premises in the same safe and livable condition in which they were at the time of the letting does not give rise in case of omission to repair to an action of tort against the landlord, that the language used in the cases at bar presents a question of law as to its interpretation and legal effect, and that properly interpreted a case is not presented coming within the third class defined in the *Fiorntino* and *Ryerson* cases, that is, cases where the landlord agrees to "keep and maintain the premises in a condition of safety on his own responsibility and without reference to notice from the tenant . . . and by virtue of the agreement for letting shall have and constantly retain such possession of the premises as is necessary for that purpose." *Fiorntino* v. *Mason*, 233 Mass. 451, 453. *Ryerson* v. *Fall River Philanthropic Burial Society*, 315 Mass. 244, 247–248. See also *Collins* v. *Humphrey*, 314 Mass. 759, 761–762.

In each case the entry will be

*Exceptions overruled.*