## NEW ENGLAND MUT. LIFE INS. CO. v. GILLETTE.

### No. 22, Docket 21020.

United States Court of Appeals Second Circuit.

Nov. 26, 1948.

Phillips, Nizer, Benjamin & Krim and Walter S. Beck, all of New York City, for defendant-appellant.

Oeland & Kuhn and George W. Riley, all of New York City, for plaintiff-appellee.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

L. HAND, Chief Judge.

The plaintiff, the insurer under a life policy, brought this action to cancel the policy and to enjoin the defendant, the widow of the insured and the beneficiary, from suing upon it, on the ground that it had been procured by misrepresentations of the insured in his application for the policy. The gravamen of the action was that, as all claims made under the policy became incontestable after / two years from its issue, it was necessary for the insurer to establish its defense within that period. The defendant denied that the insured had made any misrepresentations, or that he had made them with intent to deceive, or that the facts suppressed increased the risk. She also pleaded a counterclaim to recover upon the policy. Three answers to questions in the application constitute the only part of the defense that we think it necessary to consider; and two of these concerned the insured's occupation and may be treated as one. Thus there were in effect only two answers on which the result depended; they were as follows:

(1) "10. Occupation (be explicit)? Architect."

"11. Any change contemplated? No."

(2) "25. In what countries outside the United States do you intend to travel or reside? No."

The judge asked the jury to render special verdicts as to both these answers in the application. The special verdicts

were that the answers were misrepresentations; that the insured had made them without intent to deceive; and that they increased the risk. The judge made findings of his own, but in the view we take of the controversy, it is not necessary to consider them; for we dispose of the appeal, as though the action were only on the counterclaim. Both sides agree that the Massachusetts law governs, and we quote in the margin the relevant statute.[1]

The evidence, on which the plaintiff relied to prove that insured's answers were "misrepresentations" and "increased the risk of loss" was substantially undisputed. The insured had been an architect of Chicago, who in November, 1942, applied to the "Office of Civilian Defense" for an appointment for at least six months at a salary of $5600 a year. He was accepted on December 24, 1942, and was so advised on the 26th, subject to examination as to his character and physical fitness. His immediate duties were to go to London where he was to stay until the end of March, to familiarize himself with British civilian defense, after which he was to come back to Washington and send what information he had gained to the "regional offices" in this country. It was after he had been told of these duties that he made the two answers we have just quoted. He left New York on February 21, 1943, in an airplane which crashed the next day in the neighborhood of Lisbon for reasons not disclosed. We shall disregard the jury's answer to the second question, because under the Massachusetts statute an intent to deceive is a defense, alternative to an increase of risk; that is to say, if the insured has made a misrepresentation, it will also

avoid the policy, if "the matter misrepresented" increases the risk, though it is not made with intent to deceive, and it will also avoid the policy if it is made with intent to deceive, though it does not increase the risk.[2] Since we think that both answers were misrepresentations, and since the jury decided on adequate evidence that they increased the risk, it makes no difference whether or not they were made with intent to deceive.

First, as to whether the answers were "misrepresentations" at all. The defendant argues that the insured did not "contemplate" any change in his "occupation" from that of an architect; and that he did not "intend to" "travel" "in any" countries outside the United States. Next, it argues that if he did "contemplate" the one, and "intend" the other, his answers were not in Massachusetts "misrepresentations." We will dispose of the second point first. It was indeed for long doubted that in an action of deceit, or to rescind a transaction, a false utterance of opinion or of intent, or a promise, made with intent not to perform, was an adequate foundation. That was not so much because courts doubted that the opinion or the intent was an existing fact, or that a promise was the expression of an intent to perform, as because of the supposed difficulty of proof and because such declarations are often uttered in such circumstances that the hearer ought not to rely upon them. This doctrine has, however, been generally abandoned long ago; and the courts of Massachusetts, as much as those elsewhere, today recognize that such falsehoods may be actionable.[3] When the insured declared that he did not "intend" to "travel" "in" countries outside the United States, he

---

[1] Mass. General Laws-Insurance. C. 175 § 186. Misrepresentation by Insured: Effect.

"No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

[2] Ring v. Phoenix Assurance Co., 145 Mass. 426, 14 N.E. 525; Brown v. Greenfield Life Ass'n, 172 Mass. 498, 53 N.E. 129; Rappe v. Metropolitan Life Insurance Co., 322 Mass. 438, 77 N.E.2d 641.

[3] Comstock v. Livingston, 210 Mass. 581, 97 N.E. 106; Feldman v. Witmark, 254 Mass. 480, 150 N.E. 329; Schleifer v. Worcester North Savings Institution, 306 Mass. 226, 27 N.E.2d 992.

"misrepresented" his intention. He knew that he was to be in England for over a month at least, and it is pedantry to argue that he was not to "travel in" England because he might be all the time in London. It was not the extent of his movements in foreign countries which concerned the insurer, but his presence there; as appears by the alternative of the question itself: "travel or reside." Had the plaintiff asked him to do so, the judge would have been bound to tell the jury that the question covered movements from the border of the country to any place within it, or from place to place within it. Even more unreasonable is the argument that the insured did not "contemplate" any change in his "occupation" as an architect. He meant to abandon it for at least six months and take up a new job which would occupy all his time and for which he was to be paid at the rate of $466 a month. No legerdemain can conjure away the untruth of both these answers; and the judge would have been justified in directing the jury to find that they were false.

Were it not for the "War and Aviation" exception in the policy (which appears as part of the request to charge later considered), it would have been as obvious that the "matter misrepresented" increased the risk, as that the answers were misrepresentations. The "matter" was in the one case the proposed trip to England, and in the other, the new job which was to take him there; and it was not debatable that a visit to that country in March, 1943, involved greater risks than continued presence here. It was nevertheless true that the plaintiff had protected itself against a part of these risks by excepting death from injuries or diseases which were a "result" or an "incident," of war. Had all the added risks of being in England been covered by this phrase, the "matter misrepresented" would

not have increased the risks at all. Just what forms of death the words "as a result of," or "any incident" of war would have excepted, it is not entirely easy to say, although we are to remember that the clause, having been drafted by the plaintiff, would be narrowly construed. At any rate it would scarcely have included all deaths which would not have happened, had there been no war; the cause would presumably have to be more direct than that. Suppose, for example, that the insured had been killed in a railway wreck, and it could have been shown that this was due to old rolling stock which had not been kept in repair because of the war; or to an inexperienced engineer. The "injury" would have "resulted" from the war, if by that was meant that the war was one of the conditions sine qua non to its happening; yet it is not likely that any court would so enlarge the exception. Or again, suppose that the insured had contracted pneumonia or had got ptomaine poisoning because it was difficult in war time to get properly heated quarters, or unspoiled food: it is hard to believe that the insurer could have escaped.

■ In any event there is no ground for saying the insured's presence in England could not have increased risks which were not the result of war or were not an incident of war, and there was certainly a question for the jury. Indeed, we do not understand that the defendant means to deny that there was; her complaint is of the judge's refusal of a request which we quote in the margin.[4] Had she asked the judge to construe the "War and Aviation" exception, it would have been his duty to do so, and that might have helped the jury by eliminating those risks whose increase was not relevant; but the defendant did not ask for a construction of the clause, believing perhaps that it was clear enough as it was. What she

---

4 3. In connection with your deliberations to determine whether any misrepresentation innocently made, actually increased the risk of loss, you may consider the fact that under the policy, the insurance company excluded its liability, if the insured died,

"* * * within two years of the date of issue of the policy, from injuries incurred or disease contracted outside the forty-eight states of the United States, the District of Columbia and the Dominion of Canada, as a result of war, or any incident thereof."

did ask was that the judge should tell the jury that they might "consider" it in deciding whether the misrepresentations increased the risks. That was not to ask him to construe the meaning of the policy, which was his duty and not the jury's; it was not even to ask him to explain to them that it was only an increase in those risks which the clause did not except that they should determine. To tell them that they might "consider" the clause, would not have served to enlighten them at all. Of course they might "consider" it; it was in the case like all the other evidence. To single it out as particularly significant without telling them what bearing it had, was more likely to mislead than to help them. He should either have refused it, as he did; or he should have elaborated, as he was not asked to do. It was not even as though he had discussed the evidence at large—as it was within his power to do—and had omitted all mention of the excluded risks; that might have been unfair. He did not do that either; he left it to the parties themselves to persuade the jury whether, after war risks had been excluded, those that remained would have been increased by the insured's presence in England.

Judgment affirmed.